[Crim. No. 1037.  Second Appellate District, Division Two.—May 15, 1924.]

## THE PEOPLE, Respondent, v. HOWARD L. BOYD, Appellant.

[1] CRIMINAL LAW—OBTAINING MONEY UNDER FALSE PRETENSES—INTENT TO DEFRAUD—EVIDENCE.—To establish the offense of obtaining money under false pretenses intent to defraud must be proved, for it is an essential element thereof.

[2] ID.—INTENT TO DEFRAUD—INFERENCES—PROVINCE OF JURY.—Intent to defraud is a fact which from its nature must usually be established inferentially, and the question of intent is one of fact to be determined by the jury.

[3] ID.—EVIDENCE—INFERENCES.—In a prosecution for obtaining money under false pretenses, the jury having reached the conclusion, as indicated by their verdict of guilty, that the defendant made the representations alleged in the information concerning his title to, the character and value of certain land, that they were false, and that he knew them to be false, it was competent for the jury to draw the inference that the false representations were made with intent to defraud.

---

1. See 12 Cal. Jur. 451; 11 R. C. L. 837.
2. See 12 Cal. Jur. 475.

[4] ID.—FALSITY OF REPRESENTATIONS—KNOWLEDGE—EVIDENCE.—In such prosecution, in view of the evidence it cannot be said that the jury were not warranted in concluding that defendant made the representations charged in the information, and that such statements were untrue, and known to him to be untrue; or, if not known by him to be untrue, made in a reckless disregard of their truth in an effort to secure the loan which he sought from the complaining witness.

[5] ID.—EXHIBITS—FAILURE TO OBJECT—WAIVER—APPEAL.—The defendant will not be heard to make complaint for the first time on appeal that certain exhibits were erroneously admitted in evidence, where no objection was interposed to their admission in the trial court.

[6] ID.—TESTIMONY GIVEN ON FORMER TRIAL BY DEFENDANT—READING OF BY DISTRICT ATTORNEY—ABSENCE OF PREJUDICE.—In such prosecution, the reading by the district attorney, as part of the people's case in chief, of testimony which the defendant voluntarily gave at a former trial on the same charge is not subject to the objection made that the defendant was thereby compelled to testify against himself; nor did the ruling of the trial court in permitting the testimony to be so read work any injury to the defendant, where the testimony given upon the first trial contained no confession of guilt or admission tending to establish guilt.

[7] ID.—EVIDENCE—APPEAL.—In such prosecution, the fact that the complaining witness and her husband testified on the trial that they would not have paid their money to the defendant except in reliance upon his statements as to the various matters charged in the information, and that, according to defendant's claim, these witnesses testified contrary to this evidence on the first trial, discloses no issue which can be given consideration upon appeal. The statements made by the witnesses upon the first trial, introduced in evidence at the second trial upon cross-examination, are merely for impeachment, do not even create a conflict of evidence, but could only be considered by the jury as tending to impeach the testimony given by the witnesses at the subsequent trial.

[8] ID.—REPRESENTATIONS—VARIANCE—EVIDENCE—PLEADING.—In such prosecution, there was no material variance between the pleading and the proof in regard to the representation as to the worth of the property, where the testimony of defendant, if believed, was sufficient to justify the conclusion that the defendant grossly misrepresented the value of the property, the testimony of the

5. See 8 Cal. Jur. 140, 240; 8 R. C. L. 180; 2 R. C. L. 67.
6. See 8 Cal. Jur. 125, 132; 8 R. C. L. 88, 213.

people's witnesses having been to the effect that the property was entirely worthless for agricultural purposes, and practically so for any purpose; and, furthermore, there having been allegations of other representations charged to have been false, a variance between the proof and the pleading as to one would not require a reversal.

[9] ID.—PHOTOGRAPHS—UNSOUNDNESS OF OBJECTIONS.—In such prosecution, objections by defendant to the admission in evidence of certain photographs purporting to be likenesses of a portion of the land claimed to have been owned by defendant, upon the ground that the evidence would be irrelevant, incompetent and immaterial, and that a photograph could not possibly picture more than a small portion of the entire tract of 320 acres, were without merit.

[10] ID.—OFFER OF DEFENDANT TO PLEAD GUILTY—OVERRULING OF OBJECTION—PROPRIETY OF RULING.—In such prosecution, it was not error for the trial court to overrule the objection of the defendant to the admission in evidence of the offer on his part to plead guilty to one offense charged in the information, defendant's offer to plead guilty being an admission on his part of the truth of the charge that he obtained money under false pretenses, which, with the other evidence, was properly left to the consideration of the jury. (Opinion of supreme court, on denial of hearing.)

[11] ID.—ADMISSIONS—EVIDENCE.—In such prosecution, defendant's admission resulting from his offer to plead guilty was not conclusive evidence against defendant; it was competent evidence merely, its weight and sufficiency being proper subjects for the consideration by the jury. (Opinion of the supreme court, on denial of hearing.)

[12] ID.—ADMISSIONS—EVIDENCE—CONSIDERATION BY JURY.—In such prosecution, when the fact was established that the admission had been made by the accused, the admission was not before the jury as testimony by him establishing the truth of all or any part of the allegations of the information, but the fact that he had made it was before them, and was relevant as being inconsistent with his claim to the jury that he did not obtain any money under false pretenses from the complaining witnesses and was not guilty. (Opinion of supreme court, on denial of hearing.)

[13] ID.—ADMISSION MADE IN COURT—EFFECT UPON ITS RELEVANCY OR COMPETENCY.—In such prosecution, the fact that defendant made

9. Weight of photographs as evidence, notes, 15 **Ann. Cas.** 98; **Ann. Cas.** 1913D, 277. See, also, **8 Cal. Jur.** 136; 10 **Cal. Jur.** 860, 896; 10 **R. C. L.** 1154, 1160.

10. See 8 **Cal. Jur.** 98.

11. See 8 **Cal. Jur.** 279.

the admission in court can detract nothing from its relevancy or its competency. (Opinion of supreme court, on denial of hearing.)

(1) 25 C. J., p. 602, sec. 31. (2) 25 C. J., p. 652, sec. 90, p. 653, sec. 93. (3) 25 C. J., p. 652, sec. 90. (4) 25 C. J., p. 652, sec. 90. (5) 17 C. J., p. 56, sec. 3331. (6) 16 C. J., p. 569, sec. 1106; 17 C. J., p. 317, sec. 3662. (7) 16 C. J., p. 757, sec. 1557; 40 Cyc., p. 2749. (8) 17 C. J., p. 287, sec. 3626. (9) 16 C. J., p. 744, sec. 1528. (10) 16 C. J., p. 630, sec. 1254, p. 929, sec. 2290. (11) 16 C. J., p. 630, sec. 1254; p. 929, sec. 2290. (12) 16 C. J., p. 630, sec. 1254. (13) 16 C. J., p. 630, sec. 1254.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harold Ide Cruzan and E. H. Richards for Appellant.

U. S. Webb, Attorney-General, John W. Maltman and H. H. Linney, Deputy Attorneys-General, for Respondent.

CRAIG, J.—The defendant was convicted of the crime of obtaining money under false pretenses. He was specifically charged with having falsely represented to one Julia C. Cother that he owned 320 acres of fertile land in the state of Nevada, containing numerous artesian wells, with an abundant supply of water; that the value of said property was $7,000, and that his title was good and valid. The information then charges that none of such representations was true, but that the said Julia C. Cother believed them to be true, and was thereby induced to deliver to the defendant the sum of $1,500.

The grounds of this appeal are: (1) That the evidence is insufficient to support the verdicts; (2) that certain evidence was improperly admitted, and (3) variance between the allegations of the information and the proof.

In connection with the first proposition, appellant asserts that there was no evidence to show an intent to defraud. [1] To establish the offense charged in the information such an intent must be proved, for it is an essential element thereof. [2] However, this is a fact which from its nature must usually be established inferentially. [3] The question of intent is one of fact to be determined by the jury;

they have reached the conclusion which the verdict indicates, that Boyd made the representations alleged in the information, that they were false, and that he knew them to be false, it was entirely competent for the jury to draw the inference that the false representations were made with intent to defraud. Although defendant's own testimony, and that of other witnesses supporting it, was to the effect that he did not know that the statements made by him were false, the jury acted within its province in rejecting such evidence, since that to the contrary was ample. This was to the effect that when appellant solicited the loan of $1,500 from the Cothers, he stated that he had a "clear deed" to 320 acres of land in Nevada, which stood him $7,000, and that there was not a dollar against it; that he was going to plant it to canteloupes, and needed the money for seed and implements; that there were artesian wells on the land, and that by plowing furrows he could lead water for irrigation from wells located on the upper part of the land; that his property was level or rolling, productive soil, and was located about three miles from a railroad station.

Witnesses thoroughly familiar with the land, and some of them having resided near by for twenty years, testified that it was not level, or rolling, but was hilly, rough, rocky, and unfit for cultivation; 'that it was of a broken gypsite formation in which nothing could be made to grow, and that it was absolutely worthless; that there was no water on the property, but that the nearest water was a mile and a half distant therefrom, and 150 feet below it, rendering gravity flow impossible; that there were no artesian wells nearer than fifty miles, at Las Vegas, and that the railroad ran past it at a distance of nine miles. It was admitted, and shown by documentary evidence, that appellant's only interest in the land was a half interest in a contract to purchase from the state of Nevada at $1.25 per acre, but 25 cents of which had been paid by Rush, defendant's grantor, and that they had fifty years within which to pay the balance. It further appears that long after having made such representations, appellant wrote Williams, a Nevada surveyor, that he had represented the property to be worth $5,000, and inquiring whether or not wells could be dug on the land for irrigation, and if gravity flow could be used on any portion of the tract.

[4]   In view of this proof it cannot be said that the jury were not warranted in concluding that Boyd made the representations to the Cothers as charged in the information, and that such statements were untrue, and known to him to be untrue; or, if not known by him to be untrue, made in a reckless disregard of their truth in an effort to secure the loan which he sought.

[5]   It is objected that exhibits 12, 13 and 14 were erroneously admitted in evidence. However, it appears that no objection was interposed to their admission, and hence appellant cannot be heard to make complaint for the first time on appeal.

[6]   Next, ·appellant asserts that it was error for the trial court to permit the district attorney to read the testimony which the defendant voluntarily gave at a former trial on the same charge. This was done as a part of the People's case in chief. This procedure is not subject to the objection made that the defendant was thereby compelled to testify against himself. (*People* v. *Barrios,* 52 Cal. App. 528 [199 Pac. 58].) As was said in *People* v. *Dunlop,* 27 Cal. App. 460 [150 Pac. 389], where a similar situation was presented, it does not appear that the ruling complained of worked any injury to the accused. The testimony of the defendant given upon the first trial contains no confession of guilt or admission tending to establish guilt. The introduction of the testimony to which objection is so strenuously made would seem to have served no useful purpose, and should therefore probably not have been admitted; yet, since it cannot be said to have been harmful to the rights of the defendant, it will not be a ground for reversal.

In appellant's opening brief he states that ''at the time of the trial numerous witnesses were produced on behalf of the People, testifying that the land was not level, was worthless, and could not be farmed or used for agricultural purposes, and that there was no water upon the land.'' After having made this frank concession a considerable part of appellant's briefs is devoted to argument concerning the weight of evidence upon these issues, and others, which can ordinarily receive no consideration by an appellate court.
[7]   It is pointed out that the complaining witness and her husband, Robert H. Cother, testified on the trial that they would not have paid their money to Boyd except in reliance upon his statements as to the various matters charged in

the information; it is said that on the first trial these witnesses testified contrary to this evidence. It is apparent that the record thus discloses no issue which can be given consideration upon appeal. The statements made by the witness upon the first trial, introduced in evidence at the second trial upon cross-examination, are merely for impeachment, do not even create a conflict of evidence, but could only be considered by the jury as tending to impeach the testimony given by the witnesses at the subsequent trial.

[8] The argument that there was a material variance between the pleading and the proof in regard to the representation that the property was worth $7,000 is without merit. The defendant on cross-examination testified that he told the complaining witness that the land in question was "conservatively worth $5,000." This testimony, if believed, was sufficient to justify the conclusion that the defendant grossly misrepresented the value of the property, since the testimony of the People's witnesses was to the effect that the property was entirely worthless for agricultural purposes, and practically so for any purpose. Besides, there were allegations of other representations charged to have been false, and a variance between the proof and the pleading as to one would not require a reversal.

Certain photographs purporting to be likenesses of a portion of the land claimed to have been owned by Boyd were admitted in evidence, and it is argued that the trial court committed error in overruling the objections made to them. At the time they were received a proper foundation had not been laid for the admission of these exhibits. However, this was probably supplied later, but the question of lack of foundation is not presented, since during the trial appellant made no objection upon that ground. [9] The only objection offered was that the evidence would be irrelevant, incompetent and immaterial, and that a photograph could not possibly picture more than a small portion of the entire tract of 320 acres. These objections were without merit.

The most serious question presented is that resulting from the overruling by the trial court of an objection to the admission in evidence of an offer upon the part of the defendant to plead guilty to one offense charged in the information. Prior to the trial Boyd stated in open court that he would, if granted a continuance of the case until June 1, plead guilty to obtaining money under false pretenses. It appears

that the trial of the case had been set for April 27, 1923. The evidence to which objection is made consists of the record of proceedings at that time introduced upon the trial over defendant's objection. The record reads in part as follows:

"The Court: Now, People against Boyd.

"Mr. Lincoln: In that Boyd case, your Honor, appearing for defendant, I will say there have been several continuances, and we are in the position now so that if your Honor and the district attorney's office would consent to a continuance at this time until, say, the first of June, the plea which has been heretofore interposed will be withdrawn and another different plea will be made.

"The Court: Is that correct, Mr. Boyd?

"The Defendant: It is.

"Mr. Costello: By that other plea, you mean a plea of guilty?

"Mr. Lincoln: Yes, sir.

"Mr. Costello: Mr. Boyd, is that your intention, at that time, to plead guilty to one of these offenses charged in this information?

"The Defendant: Yes.

"Mr. Costello: To wit, obtaining money under false pretenses?

"The Defendant: Yes.

"Mr. Costello: You will at that time plead guilty to obtaining money under false pretenses?

"The Defendant: Yes, sir."

If this evidence was admissible it must have been the theory that the statements made by the defendant's counsel within the hearing of the accused, and apparently with his authority, constituted a confession of guilt. An offer to plead guilty under similar circumstances was treated as a confession in the case of *Commonwealth* v. *Callahan,* 108 Mass. 421. The objection urged by the defendant to this testimony is that it was incompetent, irrelevant and immaterial; prejudicial to the rights of the defendant, and he cites *People* v. *Ryan,* 82 Cal. 617 [23 Pac. 121], and *Dean* v. *State,* 72 Tex. Cr. 274 [171 S. W. 974]. The Texas case is directly in point, the court there saying: "While it is true if an agreement had been entered into, it ought to have been lived up to, yet if the appellant did not desire to enter a plea of guilty, as her counsel agreed she would do,

it was her right not to do so, and let the State prove her guilty if it could do so, and the court correctly held that this agreement of counsel was not admissible in evidence.'' In *People* v. *Ryan* a plea of guilty had been entered, but subsequently was withdrawn, and our supreme court said: ''We cannot agree that, upon principle, where a plea is withdrawn, and another legally substituted therefor, the one withdrawn can be introduced in evidence to nullify any defense under the last plea, which would be the practical result in this case of such a doctrine.''

It also appears from the testimony that during the time when the motion for said continuance was being presented to the court a recess was taken, and the defendant and his counsel left the room; the district attorney followed them into the hallway, and said to defendant's counsel, in the presence and hearing of defendant, that the case would be transferred into another court, adding, ''You know what that means. You talk over with your client and see what he is going to do, and if he pleads guilty to the charge of taking money under false pretenses we will dismiss the charge of grand larceny and I will recommend probation.'' That the district attorney left them, and soon returned, saying, ''Hurry up—hurry up—hurry up, Monroe's clerk is in there now and they want to know whether you are going to take your case into his court.'' The defendant testified that he knew that if the case was transferred to the other court he would not be permitted to file an application for probation in the event of being convicted. He further testified: ''I tossed up a nickel, and I said, 'if it comes heads, I will go in and stand trial, but if it comes tails, I will go over.' Luckily it came heads, and I said, 'I will go in and plead guilty under these conditions and take my chances.' I said, 'It is just simply a case of making the best of a bad proposition.' '' The statement of the district attorney clearly implied that it would be dangerous to the defendant to permit the case to be transferred, but that if the plea of guilty were promised and entered such steps would receive a reward; but waiving the question of the voluntary character of the offer to plead guilty, it must be regarded as constituting only a hypothetical admission which, as explained in *Smith* v. *Whittier*, 95 Cal. 279 [30 Pac. 529], is not admissible in evidence. Defendant was, in fact, offering to plead guilty upon condition that the

matter would not be transferred out of that court. The defendant did not thereby admit any distinct fact. He said in effect that for the limited purpose of avoiding the transfer of his case to be passed upon by a certain other judge he would enter a plea of guilty to one of the charges contained in the information, it being understood further that the other charge should be dismissed, without regard to its merits. The accused did not admit his guilt. He merely agreed that under certain conditions he would make an admission of guilt. There is no reason why the same rule which excludes hypothetical admissions of this character in negotiations for settlement of a civil suit from being received in evidence should not apply equally to a criminal proceeding. We conclude that the overruling of appellant's objection to this evidence was error. However, section 4½ of article VI of the constitution provides:

"No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court be of the opinion that the error complained of has resulted in a miscarriage of justice."

From a careful reading of the entire transcript, including the evidence, in the instant case, we are convinced that under the constitutional provision above quoted a reversal should not be granted. The conclusion is inevitable that appellant misrepresented the condition of his interest in the property, as well as the character of the land which he pretended to own; and that he did so knowingly and with intent to defraud. Some of these misrepresentations are charged in the information, although not all were included in it. For instance, it is charged that the defendant represented that the land in question was "fertile," whereas the testimony was overwhelming to the effect that it was stony and practically worthless. Three witnesses testified that he said the artesian wells were upon the land, while it was shown without contradiction that no wells existed thereon; it was further testified that he said he had a good and valid title to the land, whereas he had no more than a half interest in a contingent right to purchase from the state within fifty years. While it may be that the statement

admitted by the defendant to have been made to the complaining witness that the land had "stood him" $5,000 is not an admission of the alleged representation that it was worth that amount, still without doubt it was intended that the Cothers should be led to believe that the value of the property was sufficient to be ample security for the loan that was sought, and in determining whether or not a miscarriage of justice may have resulted from any error appearing in the record it is worthy of consideration that the defendant knowingly made the representation, which was of course utterly false, that the land stood him $5,000. There are other matters of a similar character which are delineated in another part of this opinion. We have considered other points argued by appellant, but find no error justifying a reversal of the judgment.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition by appellant for a rehearing of this cause was denied by the district court of appeal on June 12, 1924, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 14, 1924, and the following opinion then rendered thereon:

THE COURT.—The petition to have this cause heard in the supreme court after judgment in the district court of appeal is denied.

[10] We deem it proper, however, to say that we disagree with that portion of the opinion which holds that it was error for the trial court to overrule the objection of the defendant to the admission in evidence of the offer on his part to plead guilty to one offense charged in the information. The action of the defendant in that regard was an admission on his part of the truth of the charge that he obtained money under false pretenses, which, with the other evidence, was properly left to the consideration of the jury. (*People* v. *Jacobs,* 165 App. Div. 721 [151 N. Y. Supp. 522].) [11] Such an admission was not, of course, conclusive evidence against the defendant. It was competent evidence merely, its weight and sufficiency being proper subjects for consideration by the jury. (*State* v. *Bring-*

*gold,* 40 Wash. 12, 17 [82 Pac. 132].) [12] When the fact was established that the admission had been made by the accused, the admission was not before the jury as testimony by him establishing the truth of all or any part of the allegations of the information, but the fact that he had made it was before them, and was relevant as being inconsistent with his claim to the jury that he did not obtain any money under false pretenses from the complaining witnesses and was not guilty. (*State* v. *Carta,* 90 Conn. 79 [96 Atl. 411].) The defendant's own admission, voluntarily made, was clearly competent evidence against him. [13] That he made the admission in court can detract nothing from its relevancy or its competency. (*Ehrlick* v. *Commonwealth,* 125 Ky. 742 [128 Am. St. Rep. 269, 102 S. W. 289] ; *People* v. *Gould,* 70 Mich. 240 [14 Am. St. Rep. 493, 38 N. W. 232].)

The opinion of this court in *People* v. *Ryan,* 82 Cal. 617 [23 Pac. 121], in which it was held to be error to introduce in evidence a plea of guilty after it had been withdrawn by permission of the court and a plea of not guilty substituted, seems to be out of harmony with what we believe to be the correct and the better rule. It should be noted, however, that the court was there dealing with a case in which there could have been no conviction without the plea of guilty being considered as a "confession," and the conviction was accordingly reversed.

All the Justices concurred.