[Crim. No. 1714. Second Appellate District, Division Two.—February 7, 1929.]

THE PEOPLE, Respondent, v. WILLIAM G. SNELL, Appellant.

George E. Stoddard for Appellant.

U. S. Webb, Attorney-General, and Louis C. Campbell, Deputy Attorney-General, for Respondent.

CRAIG, J.—The appellant was jointly charged by information with two other defendants with having committed forgery and grand larceny in the county of Los Angeles on or about July 5, 1927. One of appellant's co-defendants pleaded guilty to the crime of forgery, and as to the other the charges were dismissed. Snell was tried by a jury, and on April 19, 1928, was found guilty of having forged the names of Ella E. Thurin and C. J. Thurin upon a promissory note for three thousand two hundred dollars.

The principal ground upon which a reversal is sought is the contention that the evidence is wholly insufficient to warrant or to support the verdict and judgment, although appellant admitted before the jury that he signed the name "C. J. Thurin" to the note in question, and to a deed of trust purporting to secure it. Numerous authorities are cited which hold that intent is the essence of the offense charged, whereas, it is claimed, Snell signed another's name merely while acting as a "dummy," under the instructions of his co-defendant, L. M. Cunningham, who represented to him that Mrs. Thurin's husband's signature could not be obtained at the time.

It appears that Cunningham visited the home of the Thurins in Los Angeles while they were in Denver, Colorado, and thus obtained the address and description, and that neither C. J. Thurin nor his wife knew either of the defendants, nor did they sign or authorize the signature of their names to the note in controversy. A deed of trust was signed "C. J. Thurin" by appellant in the presence of a notary public to whom he acknowledged the same to be his signature, and Cunningham sold the note and deed of trust to the Billingsley Mortgage Company, and one Irene Haskins testified that she visited the Thurin home with both Snell and Cunningham. Snell was thereafter apprehended in Chicago and returned to Los Angeles for trial, whereupon he wrote certain exemplars. A handwriting expert swore that the exemplars and the signatures "C. J. Thurin" on the note and deed of trust were all written by the same hand. Appellant testified that he had been acquainted with Cunningham for some time, and had had other business dealings with him; that he knew his own name was not "Thurin," but that he gave it as his own to the notary,

knowing that he was not telling the truth. His only attempted justification for the forgery of Thurin's name to the instruments was that to accommodate Cunningham he "sat in" as the real owner of the property, and that for the purposes of the transaction in hand he believed himself to be Thurin, and that he owned the realty described in the trust deed.

The Penal Code, by section 21, provides that the "intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused." The jury were thoroughly instructed at the request of both parties upon the law of intent, presumption of innocence, credibility of witnesses, and as to the crime of forgery. Under the facts and circumstances presented by the record before us we are unable to say as a matter of law that there was not ample justification for the conclusion at which the jury arrived.

■ Another ground urged as error in appellant's briefs is that the jury were misled by instructions which were given upon the "authority" which legally entitles a person to sign the name of another, and that certain offered instructions illustrating the application of this term were improperly refused. The instruction complained of recites that every person who, with intent to defraud, signs the name of another person, knowing that he has no authority so to do, or forges a promissory note, or passes or attempts to pass it as true and genuine, knowing it to be false, or forged, with intent to prejudice, damage, or defraud any person, is guilty of forgery. It is contended that appellant's guilt was of no greater or different degree than that of Irene Haskins, one of his former co-defendants, as to whom the charges were dismissed; that the jury should have been informed that there was no evidence tending to show that at the time of signing the note and deed of trust Snell believed that he was authorized in writing by Cunningham or the subsequently discovered true owner to execute them. It is argued that Mrs. Haskins signed the trust deed "Ella E. Thurin" at or about the same time, and for the same reason; that it was appellant's theory during the trial that she was not an accomplice, and that the trial court having so determined, the same would be true of appellant unless the jury found and had evidence from which to find that

appellant knew and had reason to know that his authority for the signing of the name, as he testified, was in fact false. The evidence adduced as to Mrs. Haskins tended to show that after a brief acquaintance with appellant and Cunningham, whom she had no reason to distrust, she was asked by the latter to write the name "Ella E. Thurin"; that she did so with no knowledge of the fact that she was signing the name of another person to a conveyance of property as security; and that upon inquiry as to why she could not have signed her own name, Cunningham said "it didn't matter what name was signed to the paper; as it didn't belong to anybody it didn't matter what name was on the paper." Hence it appears that while appellant knowingly and with intent to defraud forged Thurin's name to the documents in question as to which he later falsely represented himself as owner, Mrs. Haskins' act was accompanied by none of these elements of forgery. We think the rulings were not in this respect improper.

The defendant offered instructions stating as the law of the case that if the jury should believe from the evidence that Snell signed the note and deed of trust with "no knowledge of a fraudulent motive or criminal intent upon the part of any of his co-defendants, and that he signed the same believing that he acted merely as a dummy in accommodating the defendant Cunningham in his obtaining a loan upon the property described," they should find him not guilty. Several instructions of this general character were refused, and it is insisted that the trial court erred in giving these and in failing to give other instructions heretofore mentioned upon the question of authority. We are cited to no decision supporting this novel theory. On the other hand, the testimony was not such as to warrant it in any event. Appellant did not attempt by his evidence, nor does he indicate by his briefs, any legal or moral excuse for signing the name "C. J. Thurin," which was not his own, to an encumbrance upon real property in which he had no interest. Although he argues that he received nothing for so signing, and that the paper may have been at that time thought to be worthless, he admits in the next breath that in some manner he was trying to accommodate a confederate, which it is obvious worthless paper would not accomplish. The rejected instructions also assume that Cun-

ningham was the owner of the property and that appellant so believed. However, he, by his own testimony, stated to the jury that, acting as a dummy, he "supposed" that he owned the premises described in the deed of trust. There is no merit in this contention.

■ Prior to the trial appellant pleaded guilty, but thereafter withdrew such plea and entered a plea of not guilty. He took the stand as a witness in his own behalf, and at the conclusion of his redirect examination, wherein he swore that he did not at the time of the transaction in question know that there was any such person as Ella E. Thurin or C. J. Thurin, that he did not inquire nor learn of their existence until about a week after his arrest in Chicago, the trial court propounded questions, to which he answered, as follows: "Q. Mr. Snell, have you at any time stated that you were guilty of the crime under the count of grand larceny? A. Guilty of it? Q. Yes. A. Yes, sir. Q. You pleaded guilty, didn't you, on the 4th of April in this case to the third count charging grand larceny? A. Yes, sir. Q. And were afterwards permitted to withdraw your plea and change it? A. Yes, sir."

It is contended by appellant that the plea of guilty having been withdrawn, it was prejudicial error to examine him concerning such admission of guilt, and that the trial court in so doing expressed bias, and created an impression in the minds of the jury which could not be cured by an instruction to disregard the evidence. Authorities cited by appellant relate to much different circumstances wherein the rule has been so applied in this state to remarks of the trial court, and those cited from other jurisdictions are not in accord with the more recent rule established by our supreme court. In *People* v. *Ryan*, 82 Cal. 617 [23 Pac. 121], it was held that the legislature did not intend to say, by the language of section 1018 of the Penal Code, that "notwithstanding such substitution and doing away with the first plea, it may be given in evidence and sometimes serve as the only conclusive proof of a man's guilt under the plea of not guilty." In *People* v. *Boyd*, 67 Cal. App. 292, 227 Pac. 783, it appeared that the defendant, having been charged with several offenses, offered through his counsel to plead guilty to obtaining money under false pretenses, if the court would grant him a continuance, but notwithstanding the fact

that such continuance was granted, he thereafter pleaded not guilty. Upon the trial the record of the conversation between Boyd's counsel and the judge relating to the offer to plead guilty was read to the jury, over the defendant's objections. Upon the authority of *People* v. *Ryan, supra,* this court held upon appeal from a judgment of conviction that such offer was not admissible. The supreme court denied a hearing in the case, and in so doing said, in part: "The action of the defendant in that regard was an admission on his part of the truth of the charge that he obtained money under false pretenses, which, with the other evidence, was properly left to the consideration of the jury. (*People* v. *Jacobs,* 165 App. Div. 721 [151 N. Y. Supp. 522].) Such an admission was not, of course, conclusive evidence against the defendant. It was competent evidence merely, its weight and sufficiency being proper subjects for consideration by the jury. (*State* v. *Bringgold,* 40 Wash. 12, 17 [5 Ann. Cas. 716, 82 Pac. 132].) When the fact was established that the admission had been made by the accused, the admission was not before the jury as testimony by him establishing the truth of all or any part of the allegations of the information, but the fact that he had made it was before them, and was relevant as being inconsistent with his claim to the jury that he did not obtain any money under false pretenses from the complaining witnesses and was not guilty. (*State* v. *Carta,* 90 Conn. 79 [L. R. A. 1916E, 634, 96 Atl. 411].) The defendant's own admission, voluntarily made, was clearly competent evidence against him. That he made the admission in court can detract nothing from its relevancy or its competency. (*Ehrlick* v. *Commonwealth,* 125 Ky. 742 [128 Am. St. Rep. 269, 10 L. R. A. (N. S.) 995, 192 S. W. 289]; *People* v. *Gould,* 70 Mich. 240 [14 Am. St. Rep. 493, 38 N. W. 232].)"

The opinion further points out that, as is true of the instant case, unlike *People* v. *Ryan, supra,* the court was dealing with a case in which there could have been a conviction without the plea of guilty being considered as a "confession."

Although appellant did not at the time of the trial take exception to certain remarks of the trial court, nor assign them as grounds of appeal, he quotes them in his brief, and contends that they were prejudicial. A careful reading

of the court's examination of the defendant, and of the language quoted, fails to disclose any evidence of bias or prejudice upon the part of the judge, or inclination to influence the jury in any way. The judge asked the defendant while on the stand if he knew he was lying when he represented himself as Thurin before the notary public, to which Snell answered "Yes," and we think from the other evidence in the case that in this latter instance the witness was truthful, and that the jury must have so concluded had the question not been propounded. While the query was quite blunt, it was at least to the point, and the defendant offered no objection to frankly replying thereto.

The judgment and order appealed from are affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.