# STATE v. MAU
(No. 1600; March 18, 1930; 285 Pac. 992)

For the appellant there was a brief by *M. C. Burk,* of Riverton, Wyoming, and oral argument by *Mr. Burk.*

On behalf of the State there was a brief by *W. O. Wilson,* Attorney General; *J. A. Greenwood,* Deputy Attorney General, and *R. J. Jackson,* Assistant Attorney General, and oral argument by *Mr. Greenwood.*

KIMBALL, Justice.

The defendant appeals from a judgment following a verdict finding him guilty of rape. The information, based on Section 7080, C. S. 1920, charged that Carl Mou, on January 19, 1929, at Hot Springs County, Wyoming, "did wilfully, maliciously, unlawfully, forcibly and feloniously have carnal knowledge, and did then and there ravish a female child one Norma Cox then and, there being under

the age of eighteen years and of the age of thirteen years.''
The defendant's name is Carl Mau, and the girl's name is
Naomi Cox, but no question has been raised as to the mistake in alleging these names.

The prosecution was commenced by the filing of a complaint with a justice of the peace on February 6, 1929. The
preliminary examination was had on that day, and the defendant held to answer the charge in the District Court.
He failed to furnish bail as fixed by the justice, and was
committed to jail. The next day the information was filed
in the District Court and, at 2:45 o'clock in the afternoon,
a certified copy of the information was delivered to the defendant. The following day, February 8, defendant was
arraigned in the District Court and pleaded not guilty.
Some of the affidavits in the record give February 9 as the
date of the arraignment, but we accept the date as stated in
the endorsement on the information, that being the only
record of it. After the plea the case was set for trial on
February 19.

It is contended that the trial court erred in denying defendant's motion for leave to withdraw the plea of not
guilty. The motion was in writing, filed February 15, 1929,
and supported by affidavits of defendant and his attorney.
The affidavits show the following facts that do not seem to
be contradicted by anything in the record.

The defendant, to the knowledge of both the county attorney and the judge of the District Court, was represented
by M. C. Burk, an attorney residing at Riverton some sixty
miles from Thermopolis where the case was pending. Mr.
Burk was present representing the defendant at the preliminary examination at Thermopolis on February 6. The
judge of the District Court was also at Thermopolis on that
day, and the attorney's affidavit alleges that the judge then
told the attorney that the judge was leaving that evening
for Lander and did not intend to return to Thermopolis
until the following week, when he would take up any matters the attorney cared to present. The attorney alleges

that, resting on that assurance, he returned on the evening of February 6 to his home at Riverton, and remained there until February 11, which was Monday of the following week. On that day the judge was at Lander, and was there met by the attorney who wanted to confer about the hearing of an application to have defendant's bail reduced. The attorney was then by the judge informed of the filing of the information in the District Court at Thermopolis, of defendant's plea of not guilty and of the setting of the case for trial—facts of which the attorney had no previous notice. The next day, February 12, was a holiday. On the 13th the attorney filed and presented to the court at Thermopolis defendant's affidavits for change of judge and change of venue. On being told by the judge that the changes asked could not be granted because the affidavits were filed too late, the attorney filed the motion for leave to withdraw the plea of not guilty for the purpose of enabling the defendant to have a hearing on his affidavits for change of judge and venue, and, also, on a motion to quash the information. The defendant, in his affidavit in support of the motion to withdraw his plea, alleges that he pleaded without having consulted with his attorney about entering the plea, and without knowing that the plea would waive any right.

We assume that the facts in reference to the taking of defendant's plea on February 8 were substantially as claimed by the state, and stated by the judge as follows:

"I want to say that the defendant was brought into court, the court asked him if he had counsel, and he said he had. He was asked if he had conferred with counsel with reference to this charge and he said that he had. The information was read to him and he said he had a copy of it served on him and had conferred with counsel and was ready to plead in this case. He informed the court that Mr. M. C. Burk was his attorney and thereupon he was asked by the court what his plea was to the information and he said 'not guilty,' and the court directed that the plea be endorsed upon the information and remanded the defendant to the custody of the sheriff."

Under our practice, an affidavit for change of venue or change of judge must be filed not later than the succeeding day after the plea of not guilty has been entered and endorsed on the information. C. S. 1920, Sec. 6423. The plea waives all defects that might have been excepted to by motion to quash. C. S. 1920, Sec. 7487.

We think leave to withdraw the plea of not guilty should have been granted. It seems to have been denied on the theory that the plea should stand unless it were shown that the court had no right to take it. The defendant contended in the trial court, and continues to contend here, that the taking of the plea in the shown circumstances was a denial of defendant's constitutional right to defend by counsel. He cites State v. Moore, 61 Kan. 732, 60 Pac. 748, which seems to support the contention. That decision goes further perhaps than we should care to go in a similar case, and certainly further than we need go in the case at bar.

We may concede that the defendant was not denied any fundamental right by being arraigned in the absence of his counsel. See, James v. State, 27 Wyo. 378, 384, 196 Pac. 1045. In the case just cited the defendant was not represented by counsel at the time of the arraignment. We held that the taking of the plea was not error, and that the plea waived defects that should have been raised by motion to quash or plea in abatement. We said, however, we had no doubt that a seasonable request for leave to withdraw the plea would have been granted in order to give the defendant an opportunity to raise preliminary questions.

Though, in taking defendant's plea, no fundamental right was denied him, we think the interests of justice required the granting of his motion for leave to withdraw the plea. While it is generally held that the granting or denying of such a motion is discretionary with the trial judge (16 C. J. 399), and the cases we have examined show that it is not often that the exercise of the discretion will be interfered with by the appellate court, we have seen no case in which

the motion was denied under circumstances at all approaching those in this case.

It is hardly to be contended that defendant's attorney was negligent in not knowing beforehand that the defendant would be arraigned on February 8, or in not knowing until February 11 that the defendant had been arraigned. We believe it is quite an exceptional case in which, without notice to defendant's attorney, the information is filed, served on defendant, and the plea taken within less than two days after the preliminary examination. Further, the attorney in this case believed on what seem to have been reasonable grounds that the court would not be in session from the 6th to the 11th.

The motion to withdraw the plea was filed and presented seasonably. It was shown that defendant and his counsel had desired to exercise the right to make certain applications and motions, and that the plea had been entered without the intention of waiving the right. It was evident that, while the defendant on his arraignment was informed of his right to counsel, understood the nature of the charge, and intended to enter the plea that he did enter, he had no knowledge of the effect of the plea as a bar. State v. Moore, supra. There was no more reason to question the good faith of the defendant in desiring to ask a change of judge and venue and to move to quash the information than there would be to question the good faith of a defendant who files his motions in time.

If defendant's desire to file a motion to quash were the only matter involved, we would probably hold that the denial of the motion to withdraw the plea was without prejudice. The claimed defect was that the information contained unnecessary allegations. It charged that the girl was under the age of eighteen, and in describing the act, used the words "forcibly" and "ravish." Those words may be treated as surplusage. Ross v. State, 16 Wyo. 285, 298, 93 Pac. 299, 94 Pac. 217; Bishop, Stat. Cr. Sec. 486. The information would not be invalid. C. S. 1920, Sec. 7462.

The jury was instructed to return a verdict of not guilty if the girl was over eighteen. It would seem, however, that at the outset the defendant, confronted with such an information, might not know whether the allegations of force or of age would be treated as surplusage. There are cases indicating that the allegation of age might have been disregarded. Schroeder v. State, 92 Tex. Cr. R. 7, 241 S. W. 169; State v. Lee, 33 Or. 506, 56 Pac. 415. If the State be doubtful of its ability to prove the girl under age, it may charge the offense both ways in different counts. Greer v. State, 50 Ind. 267, 19 Am. Rep. 709; Bonner v. State, 65 Miss. 293, 3 So. 663; 17 Enc. P. & P. 661. Where, as in the case at bar, the information contains in one count a charge that the girl was under age and also that she was ravished, there would seem to be no harm in letting the defendant, before the trial, know which allegation is to be treated as surplusage. The only formal way of asking for that information under our practice is by motion to quash, and the point would be waived by demurring or pleading not guilty. C. S. 1920, Sec. 7487; State v. Horne, 20 Or. 485, 26 Pac. 665; State v. Mahoney, 24 Mont. 281, 61 Pac. 647.

The testimony on behalf of the State tended to show that the prosecutrix was about thirteen and one-half years of age, and had never met the defendant until the evening of January 19. On that evening, she first attended a dance at Thermopolis. About ten o'clock she and two other young girls, Virginia Kenny and Gertrude Smith, in company with defendant and two other men, went from Thermopolis to another dance at Kirby, a small town a few miles from Thermopolis. The prosecutrix testified that at the dance at Kirby she was not feeling well, and alone soon left the hall and sat in the front seat of a Ford car parked in the street just outside the hall; in a few minutes the defendant followed her, got in the seat with her, and, in her words, "talked to me and asked me, and I said 'no,' and then he pushed me over in the car and forced me." She was not asked to go into details, and gave no further testimony to

show how she was "forced," though on cross-examination she said she halloed. She testified that, following the act, the defendant tried to hold her and talk to her, but she got away and ran in the dance hall. There was no evidence that she was crying, excited or disheveled. It was not shown that she was physically injured in her sexual organs or elsewhere.

The defendant testified that the prosecutrix in the dance hall complained of a headache and asked him to go outside with her; that they went out together; stayed out four or five minutes, and then returned to the hall. He claimed nothing unusual happened; that neither he nor the girl were in the Ford car, and denied that he either tried to have or had sexual intercourse with her.

There was a good deal of evidence of what the prosecutrix told others. She testified that she told of the rape at least three times—to Virginia Kenny at the dance hall at Kirby; to Gertrude Smith a day or two later, and to her mother on January 28. Virginia Kenny testified that prosecutrix, on her return to the dance hall, said "he threw it into me," and asked what she should do about it. Gertrude Smith testified that she talked with Virginia Kenny and prosecutrix on the street in Thermopolis on January 20, and prosecutrix then said "she had been out with Carl Mau and that he had raped her." There was also some testimony that prosecutrix then said she was afraid she was "knocked up." Both Virginia Kenny and Gertrude Smith advised prosecutrix to tell her mother. Prosecutrix testified that on January 26, on being questioned, she told her mother of the trip to Kirby, but not of the rape; and on January 28, being questioned again, she told her mother of the rape. The mother was not asked about this. The defendant introduced a transcript of a part of the testimony of prosecutrix at the preliminary examination on February 6, showing that she then testified that she had told no one of the rape except her mother and Marguerite Wilson.

Counsel for defendant contends that the court erred in permitting Virginia Kenny and Gertrude Smith to relate the conversations received as evidence of complaints. It is argued that they did not show complaints, but merely casual recitals of a past transaction. It seems to be conceded that the testimony was admissible if it tended to prove complaints.

It has been said that "to make complaint" means "to make disclosure of the pain, grief, indignation, mortification or resentment occasioned by the outrage." State v. Bebb, 125 Ia. 494, 101 N. W. 189, 190; and see, People v. Wilmot, 139 Cal. 103, 72 Pac. 838; Cunningham v. People, 210 Ill. 410, 71 N. E. 389. The above definition, if used as a test, would have to be applied with care in cases of rape of young girls who may not fully appreciate the enormity of the outrage. We need not decide whether this is a case of the kind last mentioned. Too much importance must not be put on the language of the disclosure. In fact, as we shall presently see, the State is not ordinarily permitted to prove the particulars of the complaint. The evidence of the fact of complaint is admitted when the woman is a witness to show that she made such disclosure as was natural. "The essence of the process consists in the showing that the woman did not in fact behave with a silence inconsistent with her present story." Wigmore on Ev., Sec. 1135. The prosecutrix, in the conversations objected to in the case at bar, not only told what had happened, but asked what she should do about it. The evidence was not objectionable on the ground urged.

While there is some doubt whether the point is raised in this court, we deem it proper for guidance in a new trial, to call attention to the rule that prevails in most jurisdictions in this country, that the State is entitled to prove only the fact of complaint with such particulars as are necessary to identify the subject matter. Further terms of the utterance "turn the statement into a hearsay assertion." Wigmore, Sec. 1136. We do not now need to say

anything of the rules (Wigmore, Sec. 1128-1131) under which the particulars, or some part of them, may become proper evidence in rehabilitation of an impeached witness. The State may prove the fact of complaint by the prosecutrix and the person to whom she complained. The defendant may ask for particulars on cross-examination. 3 Greenleaf on Ev., § 213; Underhill, Crim. Ev., Sec. 612; cases cited in notes, 2 Ann. Cas. 235 and 11 Ann. Cas. 99.

On the subject of complaints the court gave the following instruction:

"The jury are instructed upon the trial of a defendant accused of the crime of rape the fact that the prosecutrix made early and prompt complaint of the wrong and injury committed upon her person, and to her character and chastity, is admissible and may be received and considered by the jury in corroboration of other testimony given in the case.

"The court instructs the jury that if you believe from the evidence that Naomi Cox told Virginia Kenny of the assault alleged to have been made upon her, at the earliest opportunity and told Gertrude Smith and her mother of the injury and assault soon after the offense was committed, these are corroborative circumstances tending to sustain the truth of her statements, which the jury may consider."

We have made brief reference to the purpose for which such complaints are received in evidence. The question now is whether the jury should be told that complaints may be considered "in corroboration of other testimony given in the case," and "are corroborative circumstances tending to sustain the truth of her statements."

In State v. Rodesky, 86 N. J. L. 220, 90 Atl. 1099, 1100, a similar question was considered. The defendant was prosecuted for a sexual offense, and complaints by the girl had been received on the same theory that complaints are received in rape cases. The trial judge admonished the jury as to the importance of corroboration of the testimony of the injured girl, and then added that "on the question of

corroboration you should take into consideration whether Emily (the girl) made a prompt complaint.'' This was held error. The court said that ''even in trials for rape the fact that a complaint was made by the woman is admitted not as corroborative of the facts to which she has testified on the trial, but for the purpose of meeting in advance a self-contradiction in her conduct which if unexplained would discredit her as a witness.'' Then, after saying something of the basis of the rule, the court continues: ''In jurisdictions, therefore, in which testimony of this sort is admitted to prove the fact that a complaint was made upon trials for rape, or analogous assaults, the effect of the fact thus proved is to remove from the State's witness an otherwise discrediting circumstance and thereby to affect favorably her credibility, which is a widely different thing from its being a corroboration of the testimony that such witness may be about to give or may have already given upon the witness-stand.'' The case was reversed because of ''the wrongful use that was made of this evidence when the jury was instructed that if a complaint was made by the State's witness it was a corroboration of her testimony or might be so considered by the jury.''

It is true that in the books evidence of complaints is frequently said to be corroborative of the testimony of the witness. It has long been understood, however, that the fact of complaint is not evidence of the truth of the facts alleged and of which the witness complained. Johnson v. State, 17 Oh. 593; People v. McGee, 1 Denio (N. Y.) 19; Commonwealth v. Cleary, 172 Mass. 175, 51 N. E. 746. It is usually held that the evidence is inadmissible when the victim is not a witness (Elmer v. State, 20 Ariz. 170, 178 Pac. 28, 2 A. L. R. 1519 and note) ; and that it is not corroboration under a statute forbidding a conviction on the uncorroborated evidence of the victim. Note, 60 A. L. R. 1148. The danger of using the words ''corroboration'' and ''corroborative'' in instructions referring to such evidence is obvious. The jury may understand that the fact of com-

plaint is corroboration in the sense of being other evidence of the facts to which the witness has testified.

In England, although the particulars of such complaints are received in evidence and often referred to by the name "corroboration," the courts have been careful to draw the same distinction drawn in State v. Rodesky, supra. In Reg. v. Lillyman (1896), 2 Q. B. 167, 170, it was said: "It is necessary in the first place to have a clear understanding as to the principles upon which evidence of such a complaint, not on oath nor made in the presence of the prisoner, nor forming part of the *res gestae,* can be admitted. It is clearly not admissible of the facts complained of; those facts therefore must be established if at all, upon oath by the prosecutrix or other credible witness, * * *. The complaint can only be used as evidence of the consistency of the conduct of the prosecutrix with the story told by her in the witness box, and as being inconsistent with her consent to that of which she complains." And, at p. 178: "It has been sometimes urged that to allow the particulars of the complaint would be calculated to prejudice the interests of the accused, and that the jury would be apt to treat the complaint as evidence of the facts complained of. Of course, if it were so left to the jury they would naturally so treat it. But it never could be legally so left; and we think it is the duty of the judge to impress upon the jury in every case that they are not entitled to make use of the complaint as any evidence whatever of those facts, or for any other purpose than that we have stated." In the recent case of Rex v. Lovell (Ct. Cr. App.), 129 Law Times Rep. 638, the trial judge had referred to the fact of complaint as "corroborative evidence." It was claimed that this was a misdirection. The court of appeal held that it was not, but intimated that there clearly would have been a misdirection if the charge had been likely to convey the impression that the fact and particulars of the complaint were evidence of the facts complained of. In closing the opinion Lord Hewart, C. J., said, "it cannot be made too plain in cases

of this character that complaints made by the girl or woman are not evidence of the facts complained of, but are only matters which may be taken into account by the jury when they are considering the consistency, and therefore the credibility, of the story which the woman or girl tells.''

The cases from which we have quoted sufficiently state the principles to be observed in instructing the jury on the subject of complaints in a new trial of the case. We need not decide whether the instruction given was so misleading as to have required a reversal of the judgment in the absence of error in other matters. Nor need we discuss other objections to this or other instructions, as it seems that those objections relate to errors or mistakes that are immaterial or will be avoided on being called to the attention of the trial court at a new trial.

The State introduced as a confession evidence that defendant consented to plead guilty to a charge of assault with intent to rape. The offer was made in these circumstances as shown by the testimony of the prosecuting attorney. The defendant was arrested on January 26 on the charge of making a disturbance. He was still under arrest on that charge, and had not been charged with rape, when, on February 1, the prosecuting attorney, sheriff and justice of the peace had the defendant brought from jail to the sheriff's office for a conference. The sheriff and the prosecuting attorney first admonished the defendant that anything he said would be used against him. The prosecuting attorney and the defendant then had a conversation which the attorney tells as follows:

''I said to Mau, 'This little girl says that down there at Kirby at that dance, a week ago last Saturday night, you took her out in a car, a closed car, and had intercourse with her.' He never answered that, and I then said, 'you are going to be charged with rape, now I can file one of two charges, I can charge you with rape or I can file a charge against you for an assault with intent to commit rape.' I didn't explain to him the difference between the two

charges, but I did tell him that the charge for assault carried a lighter penalty, or didn't carry as heavy a penalty as the other, and I told him that it was the policy of the courts where a man entered a plea of guilty, to be more lenient in pronouncing judgment than where they were tried and convicted of a charge, and I said to him that if he wanted to enter a plea of guilty, I would file the lighter charge against him of assault with intent to commit rape. There was some little conversation in regard to that at the time, and I rather think—in fact he said he thought it would be better for him to enter the plea to the lighter charge, and I said, 'well, I will prepare a charge of assault with intent to commit rape, against you, and will have the complaint ready, and we will dispose of it tomorrow, and in the meantime, think it over.' "

The following day the defendant was brought before the justice of the peace with whom in the meantime had been filed the complaint for assault with intent to rape. The prosecuting attorney was present and again told defendant that any admissions he made would be used against him. The complaint was read and the justice asked for the plea. The prosecuting attorney explained that the defendant could not plead guilty before the justice, but could only waive or demand a preliminary examination. The attorney then (in his language) "again told him (defendant) about the same as I did the day before in regard to what the policy of the court would be if he entered a plea of guilty, and he said, 'Well, I will waive the preliminary and go over there before the court next Monday morning and plead guilty and have it over with.' " The justice of the peace testified that the defendant when arraigned "said at first that he wouldn't plead guilty, and then afterward said he would plead guilty and go over to the District Court and take his chances, or something to that effect."

The defendant on the trial denied that he either had or attempted sexual intercourse with the prosecuting witness. In the circumstances his statement that he would plead guilty to assault with intent to rape as a compromise of the charge of rape may have been taken by the jury as a

confession of guilt of the crime of rape. At any rate, the testimony was evidently offered and relied on by the State as a confession of guilt, and its admissibility must be tested by the rules governing the admission of confessions. Mortimore v. State, 24 Wyo. 452, 462, 161 Pac. 766.

There are several cases holding that defendant's offer to plead guilty upon a condition may be proved as evidence of admission of guilt. Commonwealth v. Callahan, 108 Mass. 421; State v. DeBerry, 92 N. C. 800; Kirk v. State, 56 Tex. Cr. R. 429, 120 S. W. 436; Christian v. United States, 8 Fed. (2d.) 732; Contra, State v. Abel, 320 Mo. 445, 8 S. W. (2) 55. In each of these cases the offer came from the defendant and was "voluntary" in the sense of that word when used in connection with confessions. In People v. Boyd, 67 Cal. App. 292, 227 Pac. 783, there was some evidence of inducement held out by the prosecuting attorney, but defendant's offer was apparently made on the advice of his own attorney. The Court of Appeals did not pass on the question of the effect of the inducement, but on other grounds held that the evidence was inadmissible; the Supreme Court in disagreeing with the Court of Appeals assumed that the offer was voluntary. People v. Boyd, 67 Cal. App. 302, 227 Pac. 786.

In the case at bar we need not decide whether voluntary offers to plead guilty are admissible as confessions; nor consider how that question might be affected by decisions as to the admissibility of withdrawn pleas of guilty. See, Kercheval v. United States, 274 U. S. 220, 47 Sp. Ct. 582, 71 L. Ed. 1009, and cases cited showing the conflict of authority.

The offer in our case came from the prosecuting attorney, a person in authority, to the defendant, a prisoner without counsel. The defendant apparently was induced to accept the offer by the implied promise and threat which the offer contained. This court in Mortimore v. State, supra (at p. 464 of 24 Wyo.) stated the general rule as to the admissibility of confessions by quoting from Wharton on Crim. Ev., Section 649, where it is said to be well settled that

"even a slight inducement" held out by a person in authority renders the confession involuntary. The rule in England has recently been stated (Ibrahim v. Rex (1914), App. Cas., 599, 609) thus:

"It has long been established as a positive rule of English criminal law, that no statement by an accused is admissible in evidence against him unless it is shewn by the prosecution to have been a voluntary statement, in the sense that it has not been obtained from him either by fear of prejudice or hope of advantage exercised or held out by a person in authority. The principle is as old as Lord Hale."

There can be no doubt that the offer of the prosecuting attorney to the defendant was an "inducement" within the rule excluding confessions obtained by inducement. An examination of the authorities cited in Mortimore v. State, supra, will show that in many cases the inducement was an offer or promise of much less importance than that shown in the case at bar.

The inducement was proved by the State's own evidence. It is true that the defendant had been told that anything he said might be used against him; but that caution in the circumstances amounted to little or nothing. It was immediately followed by an offer that put before the defendant two alternatives between which he was obliged to choose. See, Wigmore on Ev., Sec. 824. He could remain silent or assert innocence, and be prosecuted for rape; or he could accept the offer and plead guilty to a less serious charge with the expectation that he would be dealt with leniently. The evidence that he chose the second alternative was obtained by inducement and should have been excluded.

The judgment will be reversed, and the case remanded for further proceedings including a new trial, with the direction that defendant be granted leave to withdraw his plea of not guilty.

*Reversed.*

BLUME, Ch. J., and RINER, J., concur.