[Crim. No. 7833.   Second Dist., Div. Two.   Oct. 23, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. FRED L. CLAY, Defendant and Appellant.

Fred L. Clay, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

HERNDON, J.—This appeal, prosecuted *in propria persona,* is taken from the judgment following a jury trial wherein appellant was convicted of three counts charging him with forgery in violation of section 470 of the Penal Code. During the pendency of this appeal, this court appointed two different attorneys to assist appellant and this court in reviewing the record herein for the purpose of ascertaining whether or not there is any basis for any claim of prejudicial error.

Both of these court-appointed counsel have made separate reports to us to the effect that, after careful study of the record, they had concluded that this appeal was entirely without merit. ▉▉▉ After making our own examination of the entire record, we have concluded that no prejudicial error was made in the trial court. Although there is some conflict, the evidence supporting the verdict and judgment is more than sufficient.

In summary, it appears that appellant was employed by the Chemical Contour Corporation as a maintenance foreman until August 6, 1960. At that time he had all the keys to the premises and had trained certain security dogs used by the company as the result of a series of robberies. Although the

locks on the front part of the premises were changed on August 6, 1960, and appellant returned his keys shortly thereafter, there was evidence from which it could have been concluded that it would have been possible for a person to enter the building through a window in the rear thereof. The broken latch on this window was not repaired until after August 22, 1960.

On August 22, 1960, it was discovered that a number of the company's checks were missing as well as a check protector. Mr. Langworthy, a vice-president of the company, testified that the checks involved in the instant action were among the number series found to be missing and that the impressions made thereon were similar to those made by the stolen check protector.

Mary S. Coleman, a codefendant who earlier had entered a plea of guilty to one count of the joint information and who was still awaiting sentencing, testified that on August 19, 1960, she had met appellant in a bar. He was unhappy because he had been discharged from his job and had no income. She offered to help him in any way she could. He then told her that he had access to some payroll checks and a sample of the required signature. She agreed to look at them and they drove in separate cars to his former place of employment. She waited in a bar and he returned shortly with the checks and the check protector and said, "See, this makes it perfect." Mrs. Coleman further testified that the same night and the following day certain of the checks were forged, appellant using the check protector on them. He told her that Mr. Langworthy usually signed the checks, so she signed his name simulating his signature as it appeared on a letter discharging appellant. Langworthy had testified earlier that he always signed company checks "Eugene M. Langworthy," whereas the signature on each of the *forged* checks was "E. M. Langworth" as it was on the *letter* by which he had dismissed appellant as an employee of the company.

Mrs. Coleman and appellant then discussed how the checks were to be cashed. Appellant said that he did not wish to use his name because he had a family and if they used someone else's name they would have to acquire different identification cards. The witness, who already had various "non-sufficient-fund" checks outstanding, finally decided to use her own name as payee and testified that she expected to use some of the proceeds from cashing the payroll checks to make good her outstanding checks. However, she said that she did not

plan ever to make good the payroll checks and had no expectation of "eventually getting away with this crime." The witness then described how she passed the checks involved in the instant case. Sometimes appellant was present in the store, and sometimes he waited outside, but in every instance she gave him most of the money obtained. She purchased various items when cashing the checks and there were introduced into evidence various shopping lists in appellant's handwriting on which suggested items of children's clothing were enumerated.

On cross-examination, Mrs. Coleman admitted that originally she had told the police that she had stolen and forged the checks herself. She explained that this statement had been made because of her desire to protect appellant and her own "in-laws" who also testified during the trial. She indicated that she had changed her mind when her in-law relatives were inconvenienced by being called as witnesses at the trial. She admitted she was testifying against appellant because she felt he had unnecessarily hurt her family and that she felt "revengeful" toward him.

Various witnesses were called in regard to the cashing of the checks at the various stores where they were employed. Their testimony tended to corroborate that of Mrs. Coleman who was admittedly an accomplice of appellant. Additionally, an in-law relative of Mrs. Coleman testified that on August 21, 1960, appellant and Mrs. Coleman visited him at his residence and appellant indicated that he wanted him to forge some of the checks which, as he admitted to the witness, he had stolen from his former employer. This witness' wife confirmed the fact that appellant visited their home that day although she was ill and did not hear any of the conversation. A Mr. Hooper testified that appellant had sought his participation in the check-passing scheme.

By way of defense, appellant, his wife, and two of his friends sought to establish an alibi on the relevant dates. However, the testimony of appellant's wife was impeached by an officer who testified that at the time of appellant's arrest she had told the officers that her husband had been away from home for two weeks and that when she got up the morning of August 23, 1960, she had found him asleep on the couch and that he must have come in sometime during the night. Appellant also admitted that he had lied to the officers regarding his not having seen Mrs. Coleman during the preceding year, but sought to explain this on the ground that his

wife was jealous over his having spent several days with her while on a "binge" a year earlier.

It is apparent from the foregoing summary that there was abundant evidence to support the jury's verdict and that nothing is thereby presented for consideration by an appellate court. (*People* v. *Kemp*, 55 Cal.2d 458, 471 [11 Cal.Rptr. 361, 359 P.2d 913] ; *People* v. *Williams*, 53 Cal.2d 299, 303 [1 Cal. Rptr. 321, 347 P.2d 665].)

The only serious question presented by this appeal arose from the following incident. At the close of the People's case in chief, the deputy district attorney, in the presence of the jury, addressed the court as follows: "At this time, if your Honor please, the People ask that your Honor take judicial notice and so instruct the jury that on December 2, 1960, in this courtroom, the defendant entered a plea of guilty to the charge set forth in Count I. I ask your Honor further to instruct the jury that a plea of guilty encompasses an admission of each and every element that is necessary to constitute a charge."

Defense counsel objected both to the proposed method of introducing this fact into evidence and to the requested instruction to the jury. The court then suggested that this be argued out of the presence of the jury, whereupon a discussion was had without reporter and outside the hearing of the jury. At the conclusion thereof the court stated to the jury : "Pursuant to the request of the People's counsel, the Court does take judicial notice of the fact that this defendant did enter a plea of guilty on December 2, 1960, to Count I, to wit: violating Section 470 of the Penal Code, a felony, and the remaining counts were continued to a future date for proceedings of disposition. The probation report was filed. The Court did not pronounce sentence for the reason the defendant stated that he inadvertently had entered a plea of guilty, and that he felt that he was not guilty, and he wanted a trial. The Court then granted his motion to vacate and set aside the plea of guilty to Count I, and set the matter back on the calendar for a trial. I think that covers it, counsel."

For purposes of appellate review, any claim of error based upon this occurrence appears to be foreclosed in this state by the following expression of our Supreme Court upon the subject in denying a petition for a hearing in the case of *People* v. *Boyd*, 67 Cal.App. 292, 302 [227 P. 783] :

"We deem it proper, however, to say that we disagree with that portion of the opinion which holds that it was error for

the trial court to overrule the objection of the defendant to the admission in evidence of the offer on his part to plead guilty to one offense charged in the information. The action of the defendant in that regard was an admission on his part of the truth of the charge that he obtained money under false pretenses, which, with the other evidence, was properly left to the consideration of the jury. (*People* v. *Jacobs,* 165 App. Div. 721 [151 N.Y. S. 522].) Such an admission was not, of course, conclusive evidence against the defendant. It was competent evidence merely, its weight and sufficiency being proper subjects for consideration by the jury. (*State* v. *Bringgold,* 40 Wash. 12, 17 [82 P. 132].) When the fact was established that the admission had been made by the accused, the admission was not before the jury as testimony by him establishing the truth of all or any part of the allegations of the information, but the fact that he had made it was before them, and was relevant as being inconsistent with his claim to the jury that he did not obtain any money under false pretenses from the complaining witnesses and was not guilty. (*State* v. *Carta,* 90 Conn. 79 [96 A. 411].) The defendant's own admission, voluntarily made, was clearly competent evidence against him. That he made the admission in court can detract nothing from its relevancy or its competency. (*Ehrlick* v. *Commonwealth,* 125 Ky. 742 [128 Am.St.Rep. 269, 102 S.W. 289]; *People* v. *Gould,* 70 Mich. 240 [14 Am.St.Rep. 493, 38 N.W. 232])''

This rule has been consistently followed in *People* v. *Snell,* 96 Cal.App. 657, 662 [274 P. 560]; *People* v. *Russell,* 77 Cal. App. 113, 120 [246 P. 110]; *People* v. *Cooper,* 81 Cal.App.2d 110, 117 [183 P.2d 67]; *People* v. *Ivy,* 63 Cal.App.2d 436, 439 [329 P.2d 505]. (See also *People* v. *Carroll,* 92 Cal. 568, 571 [28 P. 600] and *People* v. *Sanderson,* 129 Cal.App. 531, 532 [18 P.2d 982].)

There is no question but that a court may take judicial notice of its own records in the very cause before it at the moment. (*Taliaferro* v. *Taliaferro,* 180 Cal.App.2d 44, 45 [4 Cal.Rptr. 693]; 18 Cal.Jur.2d 471, § 53, Evidence.)

Further, it appears to be undisputed that the appellant's former plea was voluntarily given; and the record indicates that following the discussion outside the hearing of the jury, appellant's counsel offered no objection to the statement by the court above set forth. In the absence of objection, error ordinarily cannot be asserted on appeal.

After the occurrence above set forth, appellant took the stand and was permitted to explain at great length the

circumstances under which his prior plea was made. This, of course, was appropriate. As the court stated in *People* v. *Ivy, supra,* page 440, "Defendant's plea of guilty to count I was an admission on his part of the truth of the charge. The admission was not conclusive evidence against him. It, together with his explanation, was competent evidence, its weight and sufficiency being for the consideration of the trier of fact. From the record, the plea of guilty appears to have been made voluntarily and it had a direct bearing on the issue raised by defendant's plea of not guilty. As said by the Supreme Court in Boyd, the fact that defendant made the admission in court does not affect its admissibility."

Finally, unlike the early case of *People* v. *Ryan,* 82 Cal. 617 [23 P. 121], disapproved by the Supreme Court in the *Boyd* case, *supra,* the evidence of guilt was amply established apart from the judicial admission introduced and, in fact, if any error was committed in the manner of its introduction, it was not sufficiently prejudicial to merit a reversal. After an examination of the entire cause, including the evidence, this court is of the opinion that any such error could not be said to have resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½.)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.