[Crim. No. 7190. In Bank. July 9, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM R. WILSON, Defendant and Appellant.

Benjamin F. Marlowe for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and John F. Foran, Deputy Attorneys General, for Plaintiff and Respondent.

SCHAUER, J.—Defendant appeals from judgments of conviction entered upon jury verdicts finding him guilty of murder in the first degree (Count I) and assault with a deadly weapon (Count II). On the murder count the jury fixed the penalty at life imprisonment.

Defendant contends that he was erroneously denied a

speedy trial and that the prosecutor's use of his offer to plead guilty to second degree murder constituted prejudicial misconduct. After an examination of the entire record we have concluded that the asserted errors did not result in a miscarriage of justice (Cal. Const., art. VI, § 4½) and hence that the judgments should be affirmed.

It is unquestioned that the evidence is sufficient to support the verdicts, and defendant makes no contention to the contrary. The record shows that defendant shot and killed his wife as the culmination of a long series of beatings and other cruelties inflicted on her, coupled with threats to kill her and their children; that sufficient time elapsed between the last quarrelsome words of the parties and the time of the killing to bring the case well within the category of first degree murder; that in committing the crime defendant went first to his house, picked up his rifle and some ammunition, drove to the place where his wife was staying, and after speaking with her took the rifle from the back seat and loaded it with ammunition from the glove compartment; that he put the weapon to his shoulder, aimed it at his fleeing wife, and fired one shot into her head and one shot into her body, killing her; that he then pointed the rifle at Ida Phillips, his wife's companion, and shot her as she cried, "Don't shoot, don't shoot"; that defendant thereafter told the police, "I know I'm guilty. I was the one that pulled the trigger. . . . I meant to fire it" and "I fired at her. . . ."

The chronology relevant to defendant's contention that he was denied a speedy trial is as follows: The information charging defendant with murder and assault with a deadly weapon was filed on January 14, 1960. On January 22, 1960, defendant was arraigned and pleaded not guilty. At that time, personally and through counsel, he waived his right to be tried within 60 days of the filing of the information. Thereafter, either at defendant's request or with his acquiescence, the case was properly continued from time to time. On May 24, 1960, defendant requested June 22 as the trial date. On June 22 the prosecution asked for a continuance until July 18. Defendant's counsel indicated that he could not attend on that date because he had to go to Louisiana and would not be back in the state until August. The prosecution then suggested the end of August for trial. Defense counsel objected that that was too far in the future and suggested an earlier date, but finally proposed August 25, where-

upon the trial court continued the case to August 25 "for trial."

On August 25 defendant and his counsel appeared ready for trial. The trial court reminded counsel that in Alameda County jury trials in criminal cases did not normally start on Thursdays (August 25, 1960, was a Thursday). At this point the prosecuting attorney explained that he had just finished an eight-week trial, that he was preparing argument on a motion for new trial in another case, and that he had not yet taken his vacation. He requested that the trial date be set for October 31. Defense counsel replied that the date of August 25 had previously been set by the court for trial, and urged that he had a right to rely on that date regardless of whether new juries ordinarily came in on Thursday or not. With regard to the requested continuance date of October 31 defense counsel said, "I will object to that day or any day, and you will set it over my objection." Over this objection, the court continued the case until October 31, 1960, for trial.[1]

On October 25, 1960, defendant filed a motion in the trial court to dismiss on the ground that he had been denied a speedy trial. The motion was denied. Defendant then filed an application for writ of mandate with the District Court of Appeal. The petition was still pending on October 31, 1960, and at defendant's request the case was continued until disposition of the writ proceeding, without prejudice to his claim that he had not been afforded a speedy trial. The District Court of Appeal denied the writ, and trial began on November 2, 1960, over defendant's renewed objection to this effect.

Article I, section 13, of our Constitution declares that "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial; . . ."[2]

---

[1] The clerk's transcript erroneously recites that the latter continuance was ordered "at the request of the defendant. . . ." But defendant failed to offer a proposed correction of this entry, and the trial judge certified the transcript accordingly. (Cal. Rules of Court, rule 35(c).)

[2] As observed in *Harris* v. *Municipal Court* (1930) 209 Cal. 55, 60 [1] [285 P. 699], this constitutional provision "reflects the letter and spirit of" the Sixth Amendment to the United States Constitution, applicable to the federal courts, which declares that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." And section 686, subdivision 1, of our Penal Code reiterates that a defendant in a criminal case is "entitled" to "a speedy and public trial."

Penal Code section 1382 provides in relevant part that "The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases: . . .

"2. When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or filing of the information . . . except that an action shall not be dismissed under this subdivision if it is set for trial on a date beyond the 60-day period at the request of the defendant or with his consent, express or implied . . . and if the defendant is brought to trial on the date so set for trial or within 10 days thereafter." The relationship between the latter statute and the constitutional guarantee of a speedy trial has been variously described in the cases (see e.g., *Harris* v. *Municipal Court* (1930), *supra*, 209 Cal. 55, 61 [2]; *Matter of Ford* (1911) 160 Cal. 334, 338 [116 P. 757, Ann. Cas. 1912D 1267, 35 L.R.A. N.S. 882]; *People* v. *Romero* (1936) 13 Cal.App.2d 667, 671 [2] - 672 [3] [57 P.2d 557]); it is sufficient for present purposes to adopt the statement of this court in *People* v. *Godlewski* (1943) 22 Cal. 2d 677, 682 [3] [140 P.2d 381], to the effect that the subject provisions of the Penal Code are "supplementary to and a construction of" the Constitution.

 Here, defendant waived the original 60-day period and waived time for a considerable period thereafter. But the last day to which defendant in any way consented was August 25, 1960. This automatically brought into operation the 10-day provision of section 1382 of the Penal Code. In other words, under that section defendant had the statutory right to be tried within 10 days after August 25 unless the prosecutor or the court showed good cause for further delay. On the facts before us there was not a sufficient showing of good cause for such delay, and the court therefore erred in overruling defendant's objection to the trial date of October 31 and in denying his subsequent motion to dismiss.[3] Defendant contends that this erroneous denial of

---

[3] Although defendant had the right under Penal Code section 1382 to be brought to trial within 10 days after August 25, 1960, it was not until much later (i.e., October 25, 1960) that he made his motion to dismiss. Trial was scheduled to begin in a few days (i.e., October 31, 1960). Such tardiness in moving to dismiss appears unreasonable and should not be encouraged. On the contrary, it does not seem unfair to require the defendant in such cases to move for dismissal (if he desires to do so) *as soon as is reasonably possible after the expiration of the allowable delay*—rather than to permit him to wait until just before trial, by which time prospective jurors may be assembled, the witnesses subpoenaed and in attendance, and the proceedings ready to begin.

146

his right to a speedy trial requires reversal of the judgments of conviction without regard to whether or not the error was prejudicial. To resolve this issue it is necessary to review the nature and purpose of the right here involved, and the appropriate remedies for its enforcement.

■ *The Nature of the Right to a Speedy Trial.* It is settled that "the constitutional right to a speedy trial and the [hereinabove quoted] . . . statutory requirements may be waived." (*People* v. *Tahtinen* (1958) 50 Cal.2d 127, 131 [1] [323 P.2d 442].) ■ A defendant's consent that his trial be set for a date beyond the limit prescribed "is equivalent to a postponement upon his application" (*People* v. *Taylor* (1959) 52 Cal.2d 91, 93 [1] [338 P.2d 337]) and hence constitutes a waiver of the right; and consent will be *presumed* if the defendant fails to take the necessary procedural steps of making timely objection to such delay and thereafter moving for dismissal (*id.* at p. 93 [2]). ■ The right to a speedy trial must therefore be asserted, if at all, in the court where the prosecution is pending, and prior to the commencement of trial. (*People* v. *Newell* (1923) 192 Cal. 659, 669 [5] [221 P. 622].) It is too late to raise the point for the first time on appeal (*People* v. *Sylvia* (1960) 54 Cal.2d 115, 123 [9] [4 Cal.Rptr. 509, 351 P.2d 781]; *People* v. *Jordan* (1955) 45 Cal.2d 697, 708 [16] [290 P.2d 484]; *People* v. *Mitman* (1960) 184 Cal.App.2d 685, 689 [1] [7 Cal.Rptr. 712]); nor may it be raised for the first time by a petition for habeas corpus after judgment of conviction (*In re Anderson* (1955) 134 Cal.App.2d 552 [2] [285 P.2d 690]; *In re Todd* (1919) 44 Cal.App. 496, 502 [4] - 503 [6] [186 P. 790]) or by an application for writ of error coram nobis (*People* v. *Martinelli* (1953) 118 Cal.App.2d 94, 97 [4] [257 P.2d 37], followed in *People* v. *Jackson* (1958) 165 Cal.App.2d 183, 185 [2] [331 P.2d 981]).

■ The right to a speedy trial, furthermore, will be deemed waived unless the defendant *both* objects to the date set *and* thereafter files a timely motion to dismiss. Such a rule is the logical consequence of the fact that the objection and the motion to dismiss serve different purposes; and it is the rule laid down by the California decisions. ■ To begin with, it is settled that "When a defendant fails to *object at the time a cause is set for trial* beyond the statutory period, consent is presumed." (Italics added.) (*People* v. *Taylor* (1959), *supra,* 52 Cal.2d 91, 93 [2]; *People* v. *Tahtinen* (1958), *supra,* 50 Cal.2d 127, 131 [3]; *Ray* v. *Superior*

*Court* (1929) 208 Cal. 357, 358 [1] [281 P. 391].) The twofold purpose of this requirement is well explained in *People* v. *Lind* (1924) 68 Cal.App. 575, 579 [2] [229 P. 990]: "First, by calling the attention of the trial court to the facts upon which the objection is founded, it may serve to procure an earlier trial of the defendant and thus earlier end his durance or encompass his conviction. Second, the objection must be made as a forerunner to a motion to dismiss, for it has been uniformly determined that on appeal an order denying the motion will be affirmed if the record does not show that the objection was made." (In support of the latter proposition, see *People* v. *Miller* (1961) 190 Cal. App.2d 361, 365 [10-11] [11 Cal.Rptr. 920]; *People* v. *Baker* (1958) 164 Cal.App.2d 99, 102-103 [2] [330 P2d 240]; *People* v. *Hocking* (1956) 140 Cal.App.2d 778, 782 [4] [296 P.2d 59].)

Moreover, it is equally well settled that even after such an objection "There is *no duty incumbent on the court* to order dismissal under said section 1382 *unless* the defendant demands it" (italics added) (*People* v. *Hawkins* (1899) 127 Cal. 372, 374 [59 P. 697]; accord, *People* v. *Contrerai* (1959) 172 Cal.App.2d 369, 371 [4] [341 P.2d 849]; *Ex parte Apakean* (1923) 63 Cal.App. 438, 440 [1] [218 P. 767]). As observed in *People* v. *Lind* (1924), *supra*, 68 Cal.App. 575, 578 [1], after an analysis of the decisions of this court, "a right to move for a dismissal is the sole right protected by section 1382." It is not enough that the defendant has objected at the time the cause was set for trial beyond the statutory period: "an appellant in such a case cannot make a successful claim of error by the trial court merely because the court has not heeded an objection to the setting of the case. . . ." (*Id.* at p. 579 [1].) The defendant must also move to dismiss after the expiration of the allowable delay (but before the beginning of trial) so that if the court decides that the statutory period has been exceeded, that there has not been good cause for the delay, and that a proper and timely objection was made, a futile trial will be avoided. Thus in *People* v. *Martinez* (1956) 145 Cal.App.2d 361, 365 [1-2] [302 P.2d 643] the court reasoned: "Here, defendant's objecting, on the 59th day, to a continuance beyond the 60th day was a proper method of making his position known. A motion for dismissal on the 59th day would have been premature. *But he should have followed it up after the lapse of 60 days.* He did not do so. . . . It is not the policy of the

law to permit a person thus to keep his silence, take his chance on getting a favorable verdict and, if he loses, at some later time (perhaps after the statute of limitations has run) come in and void the judgment by raising a point which if timely raised would have allowed the filing of a new information before the running of the statute and while the state's witnesses were still available.'' (Italics added.) (Accord, *People* v. *Newell* (1923), *supra,* 192 Cal. 659, 669 [5]; *People* v. *Villarico* (1956) 140 Cal.App.2d 233, 235-236 [2] [295 P.2d 76].)

It follows that in considering the legal consequences of a denial of a speedy trial it should be kept in mind that we are dealing not with a favored right such as the right ''to appear and defend, in person and with counsel'' (Cal. Const., art. I, § 13; see *In re James* (1952) 38 Cal.2d 302, 310 [3] - 313 [10] [240 P.2d 596]) but with a privilege personal to the defendant which will be *deemed to be waived if not asserted by him in timely fashion.* The same is true, it may be added, of the right to a speedy trial guaranteed in the federal courts by the Sixth Amendment to the United States Constitution. (*Chinn* v. *United States* (4th Cir. 1955) 228 F.2d 151, 153 [2, 3]; *Morland* v. *United States* (10th Cir. 1951) 193 F.2d 297, 298 [1-3].)

*The Purpose of the Right to a Speedy Trial.* It should also be kept in mind that ''The basic policy underlying the constitutional provision [guaranteeing the right to a speedy trial] is to protect the accused from having criminal charges pending against him an undue length of time.'' *(People* v. *Godlewski* (1943), *supra,* 22 Cal.2d 677, 682 [5].) The historical necessity for such protection was adverted to by this court in declaring that the constitutional provision ''certainly, has no other function than to protect those accused of crime against possible delay, caused either by willful oppression, or the neglect of the state or its officers. For, no doubt, as said by Blackstone (Commentaries, book 3, p. 138), 'persons apprehended upon suspicion have suffered long imprisonment, merely because they were forgotten.' '' (*In re Begerow* (1901) 133 Cal. 349, 354 - 355 [65 P. 828, 85 Am.St.Rep. 178, 56 L.R.A. 513].) And Penal Code section 1382 is designed to afford the same protection. (*In re Alpine* (1928) 203 Cal. 731, 737 [4] [265 P. 947, 58 A.L.R. 1500].)

*Remedies for Enforcing the Right to a Speedy Trial.* The defendant's primary remedy, of course, is a timely motion to dismiss in the trial court. But a denial of that mo-

tion is a nonappealable interlocutory order. *(Matter of Ford* (1911), *supra,* 160 Cal. 334, 348.) In the early California cases there was some disagreement as to whether the defendant's proper remedy after erroneous denial of his motion to dismiss was to petition for a writ of habeas corpus or for a writ of mandate. (See, e.g., *In re Begerow* (1901), *supra,* 133 Cal. 349, 355; *id.* at 356-359 (dissenting opinion); *Ex parte Vinton* (1897) 5 Cal. Unrep. 624 [47 P. 1019]; *Strong* v. *Grant* (1893) 99 Cal. 100 [33 P. 773]. █ The dispute was settled by the leading decision of *Matter of Ford* (1911), *supra,* 160 Cal. 334, 342-349, where, after a detailed discussion and review of the authorities it was held (pp. 348-349) that "In our view, a defendant who claims that the superior court illegally refuses to grant his motion to dismiss an indictment [or, as here, an information] against him where he had not been brought to trial within sixty days, is entitled to apply to this court for a writ of mandate, and if, upon the hearing thereof, it clearly appears that there was no good cause shown at the hearing of the motion — and upon which showing alone would the court be warranted under the statute in refusing to dismiss; that the action of the court in its refusal was simply arbitrary and amounted to an abuse of discretion, this court will direct a peremptory writ of mandate to issue compelling the superior court to do what, in the absense of such showing, was its clear positive legal duty — dismiss the indictment.''

Since the *Ford* decision it has consistently been held that the defendant's *proper remedy* in this situation is to petition for writ of mandate prior to the commencement of trial. (See, e.g., *In re Alpine* (1928), *supra,* 203 Cal. 731, 739 [6]; *Harris* v. *Municipal Court* (1930), *supra,* 209 Cal. 55, 65; *Ford* v. *Superior Court* (1911) 17 Cal.App. 1 [118 P. 96]; *Cordts* v. *Superior Court* (1921) 53 Cal.App. 589 [200 P. 726]; *In re Spagnoli* (1921) 53 Cal.App. 523, 524 [2] [200 P. 836]; *Chrisman* v. *Superior Court* (1923) 63 Cal.App. 477, 480 [219 P. 85]; *De La Mar* v. *Superior Court* (1937) 22 Cal. App.2d 373, 375 [1] [71 P.2d 96]; *Rice* v. *Superior Court* (1940) 40 Cal.App.2d 391 [104 P.2d 874]; *Dearth* v. *Superior Court* (1940) 40 Cal.App.2d 56 [104 P.2d 376]; *Sigle* v. *Superior Court* (1954) 125 Cal.App.2d 747 [271 P.2d 526]; *Wilborn* v. *Superior Court* (1959) 175 Cal.App.2d 898 [1 Cal.Rptr. 131].) █ It has also been held that prohibition will lie to prevent the trial court from taking any further

action in the criminal proceeding other than to order its dismissal. (*Herrick* v. *Municipal Court* (1957) 151 Cal.App.2d 804 [312 P.2d 264]; *Coughlan* v. *Justice Court* (1954) 123 Cal.App.2d 654 [267 P.2d 368].) And while there was some uncertainty in the early cases as to whether habeas corpus was available in these circumstances (compare *In re Begerow* (1901), *supra*, 133 Cal. 349, with *In re Alpine* (1928), *supra*, 203 Cal. 731, 739 [6] - 744 [10]), we have entertained on its merits such an application for habeas corpus (*In re Lopez* (1952) 39 Cal.2d 118 [245 P.2d 1]) and relief through that writ has been granted in at least one recent appellate decision (*In re Vacca* (1954) 125 Cal.App.2d 751 [271 P.2d 162]).

In the case at bench a different situation is presented: defendant's motion to dismiss was denied, and his application to the District Court of Appeal for writ of mandate was unsuccessful. For reasons best known to himself (or his counsel) defendant failed to petition this court for a hearing. As noted hereinabove (fn. 1), the clerk's transcript recites—and at the time of defendant's application to the District Court of Appeal, apparently, the minutes of the court recited—that the continuance of the trial date from August 25 to October 31, 1960, was ordered ''at the request of the defendant. . . .'' On such a state of the record it was proper for the District Court of Appeal to deny defendant's application for mandate, for if the continuance complained of had been at defendant's request—as entered in the minutes—the statute commanded that ''[the] action shall not be dismissed'' (Pen. Code, § 1382, subd. 2). Defendant made no effort to have the minutes corrected in this respect, just as he thereafter made no effort to have the corresponding recital in the clerk's transcript changed.

Yet defendant now renews on appeal his contention that he was denied a speedy trial. Although the order denying his motion to dismiss was not directly appealable, it may be reviewed on appeal from the judgment of conviction. (*Matter of Ford* (1911), *supra*, 160 Cal. 334, 348.) The crucial question is whether defendant is somehow relieved of the burden, imposed by article VI, section 4½, of our Constitution,[4] of showing that the denial of his motion to dismiss re-

---

[4]Article VI, section 4½, declares: ''No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter

sulted in a miscarriage of justice.

 It is true that Penal Code section 1382, subdivision 2, is mandatory ("The court, unless good cause to the contrary is shown, must order the action to be dismissed . . ."); hence—there being no sufficient showing of good cause for delay in the case at bench—defendant then had the right to have the action dismissed on his motion. At the time when he made that motion—i.e., prior to commencement of the trial—no further showing was required of him; in particular, he was not required to affirmatively show that he had been prejudiced by the delay. (*Harris* v. *Municipal Court* (1930), *supra*, 209 Cal. 55, 64 [6].) *But that time is now past.* To properly evaluate the significance of this fact we must revert to the discussion hereinabove of the purpose of the right to a speedy trial; that purpose, it was observed, is to protect the accused from having criminal charges *pending against him* for an undue length of time. (*People* v. *Godlewski* (1943), *supra*, 22 Cal.2d 677, 682 [5].) But in the case at bench *nothing that any court can do now will achieve that end*; the charges are no longer pending against defendant; the delay has ended, and he has been duly tried and convicted. It is, very simply, too late for defendant to seek to be relieved of a delay that no longer exists. As observed in *Matter of Ford* (1911), *supra*, 160 Cal. 334, 348, "the right of appeal after conviction affords no adequate remedy. . . . Under such circumstances, if [an accused] is not afforded a remedy by *mandamus* . . . the constitutional guarantee and the statutory mandate are, as to him, worthless." And as Chief Justice Beatty pointed out, concurring in *Strong* v. *Grant* (1893), *supra*, 99 Cal. 100, 104, "Appeal . . . is no remedy, for [the accused] cannot appeal until after a trial, and the refusal to bring him to trial is the very wrong of which he complains. . . ."

 While it is thus too late to relieve defendant of the delay in bringing him to trial, it is not too late to afford him *appellate review* of the matter—i.e., for this court, in reviewing the judgments of conviction, to weigh the effect of the delay in bringing defendant to trial or the fairness of the subsequent trial itself. But in this respect it is apparent that the denial of his right to a speedy trial—a personal right, be

of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

it remembered, which is presumed to be waived if the defendant fails to assert it in timely fashion—is no more significant than any other error in procedure before trial. It follows that as one who seeks to predicate thereon a reversal of his judgments of conviction, defendant like any other appellant must show that the error was a prejudicial one. (Cal. Const., art. VI, § 4½.) Statements or implications to the contrary in *People* v. *Echols* (1954) 125 Cal.App.2d 810, 818 [7] [271 P.2d 595], *People* v. *Fegelman* (1944) 66 Cal.App. 2d 950, 955 [1, 2] [153 P.2d 436], *People* v. *Angelopoulos* (1939) 30 Cal.App.2d 538, 544 [3] - 545 [4] [86 P.2d 873], and *People* v. *Perea* (1929) 96 Cal.App. 183, 185 [3] [273 P. 836], are disapproved. Such statements stem from a failure to distinguish between a situation such as the present case where the denial of a speedy trial is raised on appeal after judgments of conviction, and cases such as *Harris* v. *Municipal Court* (1930), *supra,* 209 Cal. 55, where the defendant seeks a writ of mandate on the same ground but before the commencement of trial. There is no discussion in the latter cases of the effect of article VI, section 4½, for the simple reason that there had been no trial and hence no judgment of conviction. *Harris* and its legitimate progeny are good law, but they are irrelevant to the problem now before us.

The conclusion we reach today is in accord with a number of prior expressions of judicial opinion in California. As early as 1893 a justice of this court pointed the way to a sound solution of the problem. Concurring in *People* v. *Douglass* (1893) 100 Cal. 1, 6 [34 P. 490], Mr. Justice De Haven stated that ''even if it appeared that the court erred in not granting defendant's motion for a dismissal of the prosecution because of the failure to place him on trial within the time specified in section 1382 of the Penal Code, still, *that would not be sufficient ground for a reversal of the judgment.* A judgment should not be reversed for such an error, *except* in a case where, if the motion had been granted, the statute of limitations would have been a bar to a new information or indictment for the same offense. In other cases the remedy for a defendant whose motion for a dismissal has been improperly denied is an application for a writ of *habeas corpus* [or, as has been noted, of mandate or prohibition] *before judgment of conviction.*'' (Italics added.) In a case where the statute of limitations would have been a bar to a new prosecution if the motion to dismiss had been granted, the erroneous denial of the motion would be preju-

dicial to the defendant.[5]

In line with this reasoning of Justice De Haven are two decisions of the District Court of Appeal. In *People* v. *Grace* (1928) 88 Cal.App. 222 [263 P. 306], the court reviewed on appeal from a judgment of conviction the defendant's contention that he had been denied his right to a speedy trial, and concluded (at p. 231 [4] of 88 Cal.App.), ''Conceding, however, that the court erred in continuing the trial beyond the sixty-day period, we are satisfied that no miscarriage of justice resulted by reason of such delay. The error, if any, is one of procedure and readily comes within the purview of'' article VI, section 4½, of our Constitution.[6] More recently, the court in *People* v. *McClure* (1955) 133 Cal.App.2d 631, 634 [284 P.2d 887], rejected as unsubstantiated by the record the defendant's contention that ''he was *prejudiced* by lack of a speedy trial, in that over 60 days elapsed between the filing of the information and the commencement of the trial'' (italics added). (See also *People* v. *Weiss* (1958) 50 Cal.2d 535, 558 [12] [327 P.2d 527], where we held that a delay in bringing the defendants to trial beyond the statutory period was justified by the requirements of the orderly administration of justice and that ''defendants were not thereby prejudiced.'')

No essential difference appears in this respect, moreover, between a denial of the constitutional and statutory right to a speedy trial and a denial of the constitutional and statutory right to a speedy arraignment. Article I, section 8, of the California Constitution commands that a person charged

[5] Similarly, in a misdemeanor prosecution the erroneous denial of such a motion to dismiss would be rendered prejudicial by Penal Code section 1387, which provides in pertinent part that an order of dismissal (under § 1382) ''is a bar to any other prosecution for the same offense if it is a misdemeanor....'' (See, e.g., *People* v. *Molinari* (1937) 23 Cal.App.2d Supp. 761, 767 [5] [67 P.2d 767].)

[6] Manifestly, we are not here dealing with the denial of a procedural requisite which goes to the acquirement of jurisdiction over the prosecution, such as was involved in *People* v. *Elliot* (1960) 54 Cal.2d 498 [6 Cal.Rptr. 753, 354 P.2d 225]. In *Elliot* we noted (p. 506 [19]) that article VI, section 4½ ''was not designed to 'abrogate the guaranties accorded . . . by other parts of the same constitution,' '' but this holding is not in point as to the case at bench. The *Elliot* decision properly enforces legislation adopted pursuant to California Constitution, article I, section 8, which authorizes prosecution of a criminal action by information instead of by indictment and by essential implication requires the enactment of measures implementing that alternative procedure. *Elliot* deals only with the mandatory requirements for a valid ''examination and commitment by a magistrate'' as a jurisdictional basis for prosecution of a criminal action by that procedure instead of by indictment.

with a felony "shall, without unnecessary delay, be taken before a magistrate. . . ." Penal Code section 825 is equally emphatic in declaring that "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest. . . ." (See also Pen. Code, § 849.) The policy underlying the latter provisions and those guaranteeing a speedy trial are held to be the same (*People* v. *Goss* (1961) 193 Cal.App.2d 720, 724 [2] [14 Cal.Rptr. 569]; cf. *People* v. *Aguirre* (1960) 181 Cal.App.2d 577, 580 [1] [5 Cal.Rptr. 477]); ██ and it is well settled that "A violation of a defendant's right to be taken before a magistrate within the time specified by the law does not require a reversal unless he shows that through such wrongful conduct he was deprived of a fair trial or otherwise suffered prejudice as a result thereof." (*People* v. *Combes* (1961) 56 Cal.2d 135, 142 [1] [14 Cal.Rptr. 4, 363 P.2d 4]; accord, *People* v. *Stroble* (1951) 36 Cal.2d 615, 626-627 [7] [226 P.2d 330], affd. *sub. nom. Stroble* v. *California* (1952) 343 U.S. 181, 196-197 [72 S.Ct. 599, 96 L.Ed. 872, 884]; *People* v. *Davis* (1960) 178 Cal.App.2d 887, 894-895 [6] [3 Cal.Rptr. 465]; *People* v. *Lollis* (1960) 177 Cal.App.2d 665, 671 [12] [2 Cal.Rptr. 420], and cases there cited.)

██ In the case at bench defendant has not shown—nor does it appear that he could show—that he was in any way prejudiced by the setting of his trial for a date approximately two months beyond the last day to which he had consented. At the time of his objection to such setting, more than seven months had already elapsed since the filing of the information, due in most part to numerous continuances granted at defendant's request or with his consent; and defendant fails to demonstrate how a further delay of less than one-third of that duration could have affected in any respect the fairness of his subsequent trial. Moreover, the evidence introduced at that trial was such that the delay cannot reasonably be said to have resulted in a miscarriage of justice (Cal. Const., art. VI, § 4½).

Defendant next contends that the deputy district attorney was guilty of prejudicial misconduct. The principal complaint is based on the following sequence of events: Prior to trial defendant had offered to plead guilty, first to manslaughter and later to second degree murder. These offers were rejected by the prosecution. In connection therewith counsel for defendant had submitted an affidavit to the trial court which stated in part "that affiant indicated that affiant

would be prepared to enter a plea of second degree murder if the same were acceptable to the prosecution." This affidavit was signed by defendant's counsel as the "affiant," but directly below the quoted statement appeared the following declaration signed by defendant: "I hereby certify under penalty of perjury that the above affidavit is true and correct to the best of my knowledge, and I hereby accept the same as my own and adopt the same as my own statement." At the trial this affidavit, over defendant's objection, was introduced into evidence by the prosecutor and was commented upon in the latter's argument to the jury.

In the absence of statute, it has been held in California that an offer to plead guilty is admissible in evidence (*People v. Boyd* (1924) 67 Cal.App. 292, 302 [10] - 303 [13] [227 P. 783] (opinion of Supreme Court on denial of hearing); *People v. Cooper* (1947) 81 Cal.App.2d 110, 117-118 [183 P.2d 67]). It has also been held that a plea of guilty, later withdrawn, is admissible (*People v. Ivy* (1958) 163 Cal.App.2d 436, 438-440 [1] [329 P.2d 505]; *People v. Snell* (1929) 96 Cal.App. 657, 662-663 [4] [274 P. 560]). The underlying theory of these cases is that by his plea or offer to plead guilty the defendant has made, in fact, an admission of guilt. In jurisdictions other than California the cases are in conflict. (See 86 A.L.R.2d 326 et seq. (1961).)

All of the California cases cited above, however, were either decided before Penal Code sections 1192.1 to 1192.4 were enacted (in 1955 and 1957) or failed to consider the relevance of those sections. Section 1192.1 provides that if a defendant is charged with a crime divided into degrees, upon a plea of guilty, when consented to by the prosecutor and approved by the court, the plea may specify the degree and the defendant cannot be thereafter punished for a higher degree. Section 1192.2 makes the same rule applicable to pleas of guilty before a committing magistrate. Section 1192.3 provides that in cases where the jury can recommend or select among various punishments, the plea of guilty may specify the related punishment and, if accepted by the prosecution and approved by the court, no more severe punishment than that specified in the plea can be imposed. Section 1192.4 (added to the Penal Code in 1957; Stats. 1957, ch. 1297, § 4, p. 2616) was passed for the purpose of supplementing the foregoing three sections. It provides: "If the defendant's plea of guilty pursuant to section 1192.1, 1192.2 or 1192.3 of this code be not accepted by the prosecuting attorney

and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available. The plea so withdrawn may not be received in evidence in any criminal, civil or special action or proceeding of any nature, including proceedings before agencies, commissions, boards and tribunals.''

Whatever merit there may have been in the above cited cases holding that a withdrawn plea or offer to plead guilty to a lesser offense was admissible as an admission of guilt, that rule must be re-examined in the light of the adoption of section 1192.4. By enacting this section the Legislature has decided, just as it did many years ago in civil cases by prohibiting the introduction into evidence of offers to compromise (Code Civ. Proc., § 2078), that it is in the public interest that rejected pleas of guilty to a lesser degree of crime shall not be admissible in evidence. The obvious purpose of the section is to promote the public interest by encouraging the settlement of criminal cases without the necessity of a trial.

That policy is equally applicable to the situation now before us, where the issue is the admissibility of a rejected *offer* to plead guilty to a lesser degree of crime. If it is in the public interest to deny admissibility to a plea of guilty to a lesser degree that was formally entered but is ''deemed withdrawn'' because it was ''not accepted by the prosecuting attorney'' (Pen. Code, § 1192.4), it is equally in the public interest to deny admissibility to evidence of an offer to plead guilty to the same lesser degree that was ''not accepted by the prosecuting attorney.'' The earlier cases holding such offers to be admissible are therefore no longer controlling.

We hold that evidence of the subject offer was inadmissible, and hence that it was improper for the prosecutor to comment upon it in his argument to the jury. Such conduct should not recur in the future. But in the case at bench we are of the opinion, after a review of the entire cause including the evidence, that no miscarriage of justice resulted. (Cal. Const., art. VI, § 4½; *People* v. *Watson* (1956) 46 Cal.2d 818, 835-837 [12] [299 P.2d 243].) The affidavit embodying the offer was but a small item in the mass of credible, incriminating evidence introduced by the prosecution during this lengthy trial, and the prosecutor's brief comment thereon ''was at most a minor part of his argument and must be deemed nonprejudicial'' (*People* v. *Pike* (1962) 58 Cal.2d 70, 96 [28] [22 Cal.Rptr. 664, 372 P.2d 656]; accord, *People* v. *Garner* (1961) 57 Cal.2d 135, 156 [23] [18 Cal.Rptr. 40, 367 P.2d 680]; *People*

v. *Lane* (1961) 56 Cal.2d 773, 787 [16] [16 Cal.Rptr. 801, 366 P.2d 57]).

Other claims of error are devoid of support in the record and require no discussion.

The judgments are affirmed.

Gibson, C. J., Traynor, J., McComb, J., and White, J.,* concurred.

PETERS, J.—I dissent.

The majority conceded that defendant was erroneously denied the speedy trial guaranteed to him by the federal and state Constitutions and by the statutes of California. It is conceded that there was no good cause shown by the court or prosecution for the delay, that defendant did not waive the right but to the contrary properly and vigorously asserted it before the trial court and the District Court of Appeal.[1] It is further conceded that when defendant moved to dismiss in the trial court, that court was under a mandatory duty to dismiss. The majority correctly state that then (and, it is submitted, when the petition for mandate was filed in the appellate court) prejudice to the defendant was conclusively presumed. Article VI, section 4½, of the Constitution then had no application. At that time, the majority state, the trial court's jurisdiction, and equally the appellate court's jurisdiction, was, solely, to order a dismissal. This was so much a matter of "jurisdiction" that the majority are forced to concede that defendant was then not only entitled to the writ of mandamus, but also to a writ of prohibition or habeas corpus. The last two are, of course, jurisdictional writs. They could issue only if the sole power and duty of the trial court was to dismiss, and only if the trial court had no "jur-

---

[1] The majority question whether a proper application was filed in the appellate court, because, so it is asserted, the clerk's transcript at that time erroneously showed that on August 25, 1960, defendant had waived the time limits, and the clerk's transcript was not corrected until after the appellate court had acted. The fact is that the clerk's transcript was not before the appellate court. An examination of the record in that mandamus proceeding shows that the petition clearly alleged a demand on August 25, 1960, to go to trial on that date, and expressly and unequivocally denied the existence of a waiver or estoppel. As an exhibit to the petition, excerpts from the reporter's transcript were attached which clearly show no waiver and estoppel. On the record before it there can be no doubt that the appellate court incorrectly denied the application for the writ.

* Retired Justice of the Supreme Court sitting pro tempore under assignment by the Chairman of the Judicial Council.

isdiction" to try the accused. But then the majority hold that, because the trial court, without defendant's consent and against his will, denied him, erroneously, his constitutional and statutory rights, because the trial court rode roughshod over these fundamental rights, because the trial court, illegally, forced him to a trial over which it had no jurisdiction, and because, at such trial, over his very proper objections, introduced evidence of guilt, that in some unexplained and inexplicable manner the trial court regained "jurisdiction" to try him, and that this error, this fundamental invasion of an important constitutional and statutory right, became immaterial and must be disregarded. Thus, this invasion of fundamental rights, this error that was admittedly prejudicial when committed, becomes, in some magic way, purged. The provisions of article VI, section 4½, in some way not explained, make the error, prejudicial when committed, nonprejudicial now. This is illogical and unsound, and a wrongful denial of fundamental rights. It amounts to a judicial repeal of a constitutional and statutory right. The right to a speedy trial cannot and should not be treated so cavalierly.

The right to a speedy trial is a fundamental part of the right to a fair trial. It is not of recent origin. It is rooted in the Magna Charta, and those 17th century enactments— The Petition of Right (1628), The Abolition of the Star Chamber (1641) and The Habeas Corpus Act of 1679.[2] (See also *In re Begerow*, 133 Cal. 349 [65 P. 828, 85 Am.St.Rep. 178, 56 L.R.A. 513].) It is guaranteed by both the federal and state Constitutions. Amendment VI of the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." Article I, section 13, of our state Constitution provides, in part: "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial; . . ." The Legislature has spoken on this subject with unmistakable clarity. In setting forth the fundamental rights of a defendant in a criminal action the very first subdivision of section 686 of the Penal Code provides that in a criminal action the defendant is entitled "[t]o a speedy and public trial." Not content with simply stating the existence of this right, the Legislature in 1959 (Stats. 1959, ch. 1693, pp. 4092-4093, § 2) amended section 1050 of the Penal Code, so as to state the public policy behind this

---

[2] Perry & Cooper (1959) Sources of Our Liberties (Am. Bar Foundation) contains copies and commentaries upon these documents.

provision. It provides: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time, and it shall be the duty of all courts and judicial officers and of all prosecuting attorneys to expedite such proceedings to the greatest degree that is consistent with the ends of justice. In accordance with this policy, criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings. No continuance of a criminal trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance. . . . No continuance shall be granted for any longer time than it is affirmatively proved the ends of justice require. Whenever any continuance is granted, the facts proved which require the continuance shall be entered upon the minutes of the court. . . ."

Then the Legislature carefully and properly interpreted article I, section 13, of the Constitution, by providing what constitutes a speedy trial, and the consequences of its denial. By section 1382 of the Penal Code it is provided:

"The court, unless good cause to the contrary is shown, *must order the action to be dismissed* in the following cases: . . .

"2. When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or filing of the information . . . except that an action shall not be dismissed under this subdivision if it is set for trial on a date beyond the 60-day period at the request of the defendant or with his consent, express or implied, . . . and if the defendant is brought to trial on the date so set for trial or within 10 days thereafter." (Italics added.) The 10-day limit was added to the section by amendment in 1959 (Stats. 1959, ch. 1693, p. 4093, § 3). This amendment was aimed at clarifying defendant's rights under the section. As is pointed out in 34 State Bar Journal 717 (1959): "Previously [before the 1959 amendment], if postponement of a trial was attributable to defendant, his right to a speedy trial was clouded. . . . Now, when defendant secures postponement to a date *beyond* the statutory period of § 1382, the case must be dismissed unless defendant is brought to trial within 10 days after the last date for trial to which he himself has consented. . . ."

Under these sections the defendant has a constitutional and statutory right to have the case against him proceed to trial within the times specified, unless he consents to the delay, or unless the prosecutor proves good cause for the delay. (See *People* v. *Johnson,* 205 Cal.App.2d 831, 834 [23 Cal.Rptr. 608].) Here, the defendant waived the original 60-day period, and waived time for a considerable period thereafter. But the last day to which defendant in any way consented was August 25, 1960. This automatically brought into operation the 10-day provision of section 1382 of the Penal Code. Under that portion of the section the defendant had the statutory right to be tried within 10 days of August 25th, unless he consented to or requested the delay, or unless the prosecutor or the court showed good cause for further delay. Certainly the defendant did not then consent to or request a delay. He demanded, in no uncertain terms, that the case go to trial on August 25th, objecting to any other day. Instead of that, the court set the case for trial on October 31st, some 67 days after August 25th. The court had the legal power to so extend the time only upon a showing of good cause. The burden of showing good cause is on the prosecution or court. (*People* v. *Morino,* 85 Cal. 515 [24 P. 892]; *Harris* v. *Municipal Court,* 209 Cal. 55 [285 P. 699]; *People* v. *Fegelman,* 66 Cal.App.2d 950 [153 P. 436]; *People* v. *Echols,* 125 Cal.App.2d 810 [271 P.2d 595]; *Herrick* v. *Municipal Court,* 151 Cal.App.2d 804 [312 P.2d 264]; *Wilborn* v. *Superior Court,* 175 Cal.App.2d 898 [1 Cal.Rptr. 131].) There is no presumption that good cause exists, and the defendant need not affirmatively show prejudice from the delay. Prejudice is presumed from unreasonable delay. (*Harris* v. *Municipal Court, supra; Kehlor* v. *Municipal Court,* 116 Cal.App.2d 845 [254 P.2d 897].) While the determination of what constitutes good cause is a matter that rests in the discretion of the trial court (*In re Lopez,* 39 Cal.2d 118 [245 P.2d 1]), this discretion must not be exercised arbitrarily. (*Harris* v. *Municipal Court, supra; People* v. *Fegelman, supra.*)

Certainly no ''good cause'' for the delay was shown, and this is admitted by the majority. The trial court mentioned, and the majority emphasize, that defendant had waived the original 60-day period and waived time for a considerable time thereafter, but these facts are immaterial. Even the majority opinion concedes that a waiver of the original 60-day period did not constitute a waiver of periods beyond

the date to which defendant had consented. (See generally *Kehlor* v. *Municipal Court*, 116 Cal.App.2d 845, 848 [254 P.2d 897].) In the present case there is absolutely no basis for an estoppel or waiver, and this is conceded by the majority.

It is also conceded that defendant filed a proper motion to dismiss on October 25, 1960, six days before the date set for trial. This motion should have been granted and the majority so concede. After its denial a proper application for mandate was filed October 27, 1960. This petition should have been granted. Not only should mandate have issued, as the majority concede, but it is also conceded, had the defendant applied for habeas corpus or prohibition, he would have been entitled to such writs. (*In re Begerow, supra,* 133 Cal. 349, *In re Lopez, supra,* 39 Cal.2d 118, and *In re Vacca,* 125 Cal.App.2d 751 [271 P.2d 162], dealing with habeas corpus, and *Herrick* v. *Municipal Court, supra,* 151 Cal.App.2d 804, and *Coughlan* v. *Justice Court,* 123 Cal.App. 2d 654 [267 P.2d 368], relating to prohibition.)

The majority brush aside these fundamental and jurisdictional errors with the cavalier statement that they are merely procedural in nature and cured by the beneficent provisions of article VI, section 4½, of the Constitution.[3] Although, as the majority concede, the error may be raised on appeal, unless prejudice is shown, the defendant is without remedy. This is to imply, if not hold, that article VI, section 4½, repealed the fair and speedy trial provisions of our Constitution. This is not the law. The People in passing and the Legislature in adopting the provisions guaranteeing an accused a speedy trial have spoken on a fundamental question of policy. They have determined that, as a matter of constitutional and statutory law, it is prejudicial, as a matter of law, to deny a defendant a speedy trial. Since the People have spoken on this subject of policy it is not a proper exercise of the judicial function to subvert that policy.

As already pointed out, the defendant did not waive his rights, nor was he guilty of any acts sufficient to raise an estoppel. To the contrary, he asserted his rights by taking all procedural steps necessary to protect them. Admittedly, error was committed in denying his rights to him. Admittedly,

---

[3] This section provides that no judgment shall be set aside "on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure" unless the court believes a miscarriage of justice has occurred.

when he was forced to trial against his will and over his objections, he was prejudiced as a matter of law, and was denied a constitutional and statutory right.

The argument that by improperly forcing him to go to trial and by introducing sufficient evidence to sustain a finding of guilt this prejudice in some way disappears is patently erroneous. Such a rationalization completely frustrates the will of the People as expressed in section 13 of article I of the Constitution and in the quoted sections of the Penal Code. Under the reasoning of respondent there never could be reversible error no matter how long the trial has been delayed, as long as the prosecutor introduces substantial evidence of guilt, and the statute of limitations has not run on the offense or a witness has not died. Section 13 of article I is just as important as section 4½ of article VI. Section 13 of article I refers to a specific subject matter and so obviously prevails over the general language of section 4½ of article VI. The only proper and legal way to enforce the constitutional and statutory right of defendant to a speedy trial, where the defendant properly preserves the right, is to presume prejudice as a matter of law.

The right here involved is not a mere procedural one. It is a basic—a fundamental—right—one that may be waived, and one that must be asserted, but a basic fundamental right nevertheless. It is an integral part of the right to a fair trial. As early as 1901 in the case of *In re Begerow, supra,* 133 Cal. 349, a leading case where habeas corpus was used to dismiss a prosecution for murder because not brought to trial within 60 days of a mistrial, this court described the right as follows (p. 352): "It is well to remember that this case involves fundamental rights, and is of universal interest. Around those rights the English have waged their great battle for liberty." In *Harris* v. *Municipal Court, supra,* 209 Cal. 55, 60, the right is referred to as this "fundamental right granted to the accused." This description of the nature of the right is also stated or implied in practically every one of the cases heretofore cited describing the nature of the right to a speedy trial.

It is elementary that article VI, section 4½, has no application to fundamental rights. *People* v. *Watson,* 46 Cal.2d 818, 835 [299 P.2d 243], the leading recent case on the application of article VI, section 4½, expressly recognized that: "[C]ertain fundamental rights, however, are guaranteed to the defendant upon which he can insist regardless of the

state of the evidence, . . .'' These ''fundamental'' rights are generally recognized as the right to a jury trial and the right to a fair trial. There are many cases so holding.[4]

In *People* v. *Gaines,* 58 Cal.2d 630, 642 [25 Cal.Rptr. 448, 375 P.2d 296], Justice Traynor, in a dissenting opinion, stated the principle very clearly: ''Error that results in the deprivation of a basic right necessarily requires reversal to preclude prejudice to the judicial process and to the procedural rights of a litigant even though there might be equally fair alternatives consonant with due process.''

This statement, which, it is true, appears in a dissenting opinion, is supported by many cases. In *People* v. *Rogers,* 56 Cal.2d 301 [14 Cal.Rptr. 660, 363 P.2d 892], it was held that article VI, section 4½, had no application, regardless of the sufficiency of the evidence, to the failure to secure a personal participation by defendant in the withdrawal of the plea of not guilty. *People* v. *Brommel,* 56 Cal.2d 629, 634 [15 Cal.Rptr. 909, 364 P.2d 845], held that, ''. . . the admission of involuntary confessions compels a reversal, and section 4½, article VI, of the Constitution can under no circumstances save the judgment.'' (See also *People* v. *Trout,* 54 Cal.2d 576 [6 Cal.Rptr. 759, 354 P.2d 231].)

In *Spector* v. *Superior Court,* 55 Cal.2d 839, 844 [13 Cal. Rptr. 189, 361 P.2d 909], it was held that the refusal of the trial judge to permit the presentation of evidence or the making of an argument in support of a motion amounts ''. . . to a deprival of a substantial statutory right and is not covered by article VI, section 4½, of the Constitution.''

Denial of any basic element of a jury trial, when defendant did not personally waive, in spite of the nature of the evidence, requires a reversal, regardless of prejudice.

In *People* v. *Sarazzawski,* 27 Cal.2d 7 [161 P.2d 934], the denial of a reasonable opportunity to present and argue a motion for a new trial was held to be a substantial denial of a statutory right requiring a reversal regardless of prejudice. At page 19 it was stated that article VI, section 4½, ''does not contemplate a situation where defendant 'without fault has been denied an opportunity to determine whether or not he has been prejudicially injured.' ''

---

[4] The case of *People* v. *O'Bryan,* 165 Cal. 55 [130 P. 1042], is frequently cited as holding that article VI, section 4½, may be applicable to "constitutional" rights. That case so held, but there the defendant had waived the constitutional right involved—not to be a witness against himself—by fully testifying, voluntarily, at his trial.

In *People* v. *Hall,* 199 Cal. 451 [249 P. 859], where an error in imposing the death penalty was claimed to be non-prejudicial this court said (p. 458): "The amendment by which said section 4½ was added to the constitution was not 'designed to repeal or abrogate the guarantees accorded persons accused of crime by other parts of the same constitution, or to overthrow all statutory rules of procedure and evidence in criminal cases' [citations]. Trial by jury is guaranteed to every person charged with a felony and the denial of that right is in itself a miscarriage of justice."

In *People* v. *Mahoney,* 201 Cal. 618, 627 [258 P. 607], it is stated: "When, as in this case, the trial court persists in making discourteous and disparaging remarks to a defendant's counsel and witnesses and utters frequent comment from which the jury may plainly perceive that the testimony of the witnesses is not believed by the judge, and in other ways discredits the cause of the defense, it has transcended so far beyond the pale of judicial fairness as to render a new trial necessary. Neither can a plea for the application of the section of the constitution [art. VI, § 4½] save this situation. The fact that a record shows a defendant to be guilty of a crime does not necessarily determine that there has been no miscarriage of justice. In this case the defendant did not have the fair trial guaranteed to him by law and the constitution." (See also *People* v. *Mason,* 72 Cal. App.2d 699 [165 P.2d 481]; *People* v. *Hooper,* 92 Cal.App.2d 524 [207 P.2d 117].)

In *People* v. *Duvernay,* 43 Cal.App.2d 823 [111 P.2d 659], there was misconduct on the part of the prosecutor. It was held that this may warrant reversal in spite of convincing proof of the defendant's guilt.

In *People* v. *Diaz,* 105 Cal.App.2d 690 [234 P.2d 300], it was held that denial of the right to exercise a peremptory challenge to a member of the regular jury panel deprives the defendant of a fair and impartial jury trial, and that article VI, section 4½, is not applicable. (See also *People* v. *Wismer,* 58 Cal.App. 679 [209 P. 259].)

In *People* v. *Patubo,* 9 Cal.2d 537 [71 P.2d 270, 113 A.L.R. 1303], it was held that misconduct of a trial court judge indicating he thought that defendant was guilty of first degree murder and could not be believed was an invasion of the province of the jury and thus required a reversal regardless of the terms of article VI, section 4½.

In *People* v. *Carmichael,* 198 Cal. 534 [246 P. 62], the

defendant was refused an opportunity to question prospective jurors on the effect that it might have in their attitude that a prior jury had failed to agree on a verdict and was discharged. The question was held to go to the jury's bias and was therefore proper. This court stated at page 547: "The ruling of the court in thus limiting the appellant in his examination of the jurors was . . . the deprival of the appellant of a fundamental right,—a right to be tried by an impartial jury. It was never intended by . . . (art. VI, § 4½] to take from the defendant in a criminal action his fundamental right to a jury trial or in any substantial manner to abridge this right [citation]."

A most important case in this respect is the recent case of *People* v. *Elliot,* 54 Cal.2d 498 [6 Cal.Rptr. 753, 354 P.2d 225]. There a committing magistrate allowed, over objection, unauthorized persons to remain in the courtroom during a preliminary hearing in violation of the statutory rights of the defendant. Thereafter, the defendant was tried, and on substantial evidence convicted. This case is very similar to the instant one. Because unauthorized persons were allowed in the courtroom, the commitment was voidable and subject to being set aside by proper motion which was made and erroneously denied. The right involved was statutory and had no relation to guilt or innocence. In the instant case, by reason of the unauthorized delay, defendant's constitutional and statutory rights were invaded, the charge against him was subject to being dismissed upon motion, such motion was made, the duty to dismiss was mandatory, but the trial court erroneously denied it. In neither case did the error relate to the guilt or innocence of the defendant, or to merits of the charge. In both cases convincing evidence of guilt was introduced at the trial. In the *Elliot* case the statutory right to exclude unauthorized persons, and in this case the constitutional and statutory right to a speedy trial, were part of defendant's right to a fair trial. In *Elliot,* the right involved was described as "substantial" (p. 503). Here the right, as stated in *Begerow* (*supra,* 133 Cal. 349, 352), was "fundamental." In both cases the duty of the trial court to dismiss was mandatory. In *Elliot* it was held (p. 505): "Nor was it necessary for the accused to show actual prejudice caused by the denial of her rights. . . . Prejudice must be presumed. Obviously, if actual prejudice must be shown, the guarantee would become meaningless." The ma-

jority in the instant case come to a diametrically opposed conclusion. If *Elliot* is sound in this respect, the conclusion of the majority here is unsound. The majority have, in legal effect, overruled *Elliot.*

In *Elliot* this court discussed article VI, section 4½, in the following language (pp. 506-507):

"Article VI, section 4½, of the Constitution, cannot operate so as to save this conviction. When a defendant has been denied a fair trial prejudice must be presumed. Nor can a fair trial in the superior court cure the errors of the committing magistrate and of the superior court judge in permitting the trial to take place. . . .

"In *People* v. *Sarazzawski,* 27 Cal.2d 7 [161 P.2d 934], a judgment imposing the death penalty was reversed, even though the evidence amply supported the verdict and judgment, because of errors tending to deprive the defendant of certain elements of a fair trial. These errors, as is true in the instant case, had nothing to do with the merits of the case. One error was in telling counsel that argument on the motion for the new trial would be had on October 16th, and then requiring counsel to argue the motion on October 6th, when the motion was filed. The other error consisted in telling the jurors that if they honestly answered questions on their *voir dire* but forgot some possible ground of disqualification and remembered it after the trial started, they should keep the matter secret and not tell the judge about it. These errors were held to have denied appellant some of the elements of a fair trial. The court said (p. 11): 'When a defendant has been denied any essential element of a fair trial or due process, even the broad saving provisions of section 4½ of article VI of our state Constitution cannot remedy the vice and the judgment cannot stand. [Citing four cases.] That section was not designed to "abrogate the guaranties accorded persons accused of crime by other parts of the same constitution or to overthrow all statutory rules of procedure and evidence in criminal cases. When we speak of administering 'justice' in criminal cases, under the English or American system of procedure, we mean something more than merely ascertaining whether an accused is or is not guilty. It is an essential part of justice that the question of guilt or innocence shall be determined by an orderly legal procedure, in which the substantial rights belonging to defendants shall be respected." (*People* v. *O'Bryan,* 165 Cal. 55, 65 [130 P. 1042].)'

"It must be remembered that here we have a mandatory statute that admittedly has been violated. Unless the error can be reached on appeal from the judgment it cannot be reached at all even though the superior court erroneously denied a motion under section 995 of the Penal Code and the appellate court erroneously denied the application for a writ. To agree with respondent would, in effect, be to write the statute off the books.''

Everything said in *Elliot* is directly applicable here. The attempt by the majority to distinguish this case is completely ineffectual.

There are several cases that directly hold that, after trial, on appeal the charges must be dismissed if the right to a speedy trial is denied, and if the defendant, as here, properly asserts that right.

*People* v. *Echols, supra,* 125 Cal.App.2d 810, is such a case. This is a unanimous decision of the First Appellate District, Division One, in which this court denied a hearing. There, over defendant's objections, a trial was set for 50 days beyond the 60-day limit set forth in section 1382 of the Penal Code. Defendants' motion to dismiss was erroneously denied. Trial was had and defendants were convicted and appealed. The judgments were reversed and the trial court directed to dismiss the action. The reasoning of the court was much the same as set forth in this dissent.

*People* v. *Fegelman, supra,* 66 Cal.App.2d 950, was a unanimous opinion of the Second Appellate District, Division Two, written by Justice McComb, then a member of that court. A petition for hearing was denied. Here, without good cause, a trial was continued for several days beyond the 60-day period. Defendant moved to dismiss. The motion was denied. Defendant was tried and convicted and appealed. The court held that the trial court was under a mandatory duty to dismiss, and that (p. 955) "A defendant is not to be deprived of his constitutional rights by the improper action of a trial judge in pretending that matters which he has in chambers, as indicated by the trial judge in the instant case, will prevent a trial within the statutory period nor by the judge's effort to coerce defendant's counsel into consenting to a continuance beyond the statutory period." The judgment of conviction was reversed, and the trial court directed to dismiss the accusation.

*People* v. *Angelopoulos,* 30 Cal.App.2d 538 [86 P.2d 873], is a similar opinion by the Third Appellate District. There

the defendant, with others, was charged with arson and defrauding an insurance company. The first trial resulted in a disagreement. Two of the defendants requested a delay beyond 60 days from the time of reversal, but defendant Condos insisted on going to trial within the 60 days. The case was set for trial, and tried about 30 days beyond the 60-day limit, and all three defendants were convicted and appealed. The judgment was reversed as to all three defendants and as to defendant Condos the trial court was directed to dismiss the action solely because of violation of his right to a "speedy" trial. In deciding this point the court stated (p. 543): "When the defendant has not consented to a continuance of the cause against him, and the prosecution fails to show good cause therefor, upon motion of the accused person it is mandatory upon the court to dismiss the action when more than sixty days have elapsed without bringing the case to trial. Under such circumstances the court has no discretion to deny the motion. [Citing cases.] Article I, section 13, of the Constitution of California guarantees an accused person a speedy trial. That constitutional provision is construed by section 1382 of the Penal Code to limit the time within which the trial must be had to a period of sixty days, unless by the defendant's conduct or acquiescence he consents to extend that time, except when the business of the court, the illness of the judge, or some other good reason for delay prevents the trial during that period of time. In the case of *Ford* v. *Superior Court,* 17 Cal.App. 1 [118 P. 96], it is said:

" ' "The statute is a construction of the constitutional provision so far as to indicate what is a reasonable time within which the case should be brought to trial in order that the constitutional guaranty may be kept; and it may be fairly interpreted to mean that this guaranty is violated whenever sixty days is allowed to elapse without a trial, there being no good reason for delay and the defendant not consenting thereto. It is sufficient for the defendant, in order to make out his case upon a motion for a dismissal in the trial court, to show that he has been detained without a trial for more than sixty days." ' " And again on pages 544-545:

"It is not necessary for the defendant to affirmatively show that he was prejudiced by a continuance of trial beyond the sixty-day period prescribed by statute. The constitutional provision and section 1382 of the Penal Code absolutely guarantee an accused person a speedy trial unless good cause for denying it is first shown. Prejudice to the defendant is presumed from the violation of that guaranty. The burden

is on the prosecution to show good cause for the delay when a motion for dismissal of the action is made on that account. (*Harris* v. *Municipal Court*, 209 Cal. 55, 64 [285 P. 699].)

"The validity of the order denying a defendant's motion to dismiss a criminal action against him for failure to award him a speedy trial, may be challenged on appeal from a judgment of conviction. The order refusing to dismiss the information is not separately appealable. It may be reviewed on appeal from a subsequent judgment of conviction. (*Matter of Ford*, 160 Cal. 334, 348 [116 P. 757, Ann. Cas. 1912 D 1267, 35 L.R.A. N.S. 882]; 8 Cal.Jur. 209, sec. 280.) The continuance of a trial beyond the statutory limitation of time, over the objection of a codefendant, for the mere convenience of his associate, is a denial of a speedy trial to the objector, and under such circumstances, upon his motion under section 1382 of the Penal Code, it is mandatory for the court to dismiss the action against such objector." (See also *People* v. *Perea*, 96 Cal.App. 183 [273 P. 836], a decision by the Second Appellate District, Division One.)

The majority opinion in the present case simply refers to these cases, and, without analysis, declares that "Statements or implications to the contrary" in these four cases "are disapproved." It is submitted that these cases correctly decided the issues involved, and that their views should be approved and followed. It is of some significance that the majority do not cite even one case to the contrary.

The trial court should be directed to dismiss the action against defendant. Such a dismissal would not mean that defendant could not be proceeded against, at least on the murder charge, in a proper fashion. There being no statute of limitations as to murder, the prosecution may file another information charging that offense, or present the matter to the grand jury for a new indictment. The dismissal is not a bar to a new prosecution for the same offenses. Section 1387 of the Penal Code, found in the same chapter as section 1382, provides: "An order for the dismissal of the action, made as provided in this chapter, is a bar to any other prosecution for the same offense if it is a misdemeanor, but not if it is a felony." Many states have a substantially similar provision. Under such a statutory pattern the courts have generally held that a further prosecution after dismissal for delay in the prosecution of a felony is proper. (See annotation entitled "Discharge of accused for holding

him excessive time without trial as bar to subsequent prosecution for same offense'' in 50 A.L.R.2d 943, particularly cases collected at pages 947-951; but see *People* v. *Wilson,* 8 N.Y. 2d 391, 208 N.Y.S.2d 963 [171 N.E.2d 310].) This rule applies whether the dismissal is before or after trial. The leading case in California is *In re Begerow,* 136 Cal. 293 [68 P. 773, 56 L.R.A. 528]. There the defendant was tried for murder five times. Each time the jury disagreed. He was not brought to trial within 60 days of the discharge of the last jury, and defendant asked for a dismissal on that ground. Relief was denied. On habeas corpus the prosecution was dismissed and he was ordered released from custody. Immediately a new complaint charging the same offense was filed. Defendant claimed jeopardy. This court held the claim untenable in view of section 1387 of the Penal Code. This case was in accord with the earlier case of *Ex parte Clarke,* 54 Cal. 412 (also a murder case). Later cases have reaffirmed the *Begerow* case (*People* v. *Godlewski,* 22 Cal.2d 677 [140 P.2d 381]; *People* v. *Dawson,* 210 Cal. 366 [292 P. 267]; *People* v. *Palassou,* 14 Cal.App. 123 [111 P. 109]; *People* v. *Grace,* 88 Cal.App. 222 [263 P. 306]; *People* v. *Vacca,* 132 Cal.App.2d 8 [281 P.2d 315]). In view of the record this would be a proper case to institute a new proceeding against defendant.

I agree with the majority that the trial court committed serious error in permitting the prosecution to introduce into evidence the offers to plead guilty to manslaughter and to second degree murder. In view of the record, however, this error alone was not prejudicial.

The conviction of defendant should be reversed, and the trial court should be directed to dismiss the action.

Tobriner, J., concurred.